**WEST AMERICAN INSURANCE COMPANY, Appellant,**

v.

**Dana DICKERSON, Appellee.**

**No. 92–SC–964–DG.**

Supreme Court of Kentucky.

Nov. 24, 1993.

Mark G. Arnzen, Troy W. Skeens, Jr., Arnzen, Parry & Wentz, Covington, for appellant.

Bernard J. Blau, Gregory B. Kriege, Jolly & Blau, Cold Spring, for appellee.

REYNOLDS, Justice.

The insurance company appeals from the opinion of the Court of Appeals which reversed the summary judgment granted by the Kenton Circuit Court in favor of the company which denied appellee's claim for basic reparation benefits.

Ms. Dickerson, on the evening of December 28, 1989, left her place of employment, in the company of a friend, who drove to a place of entertainment. Subsequently they returned in order that appellee could retrieve her automobile which was parked in her employer's lot. Ms. Dickerson, having emerged from the automobile, fell and sustained a serious injury to her elbow.

This appeal concerns, primarily, Ms. Dickerson's entitlement to basic reparation benefits. The insurance carrier correctly states that basic reparation benefits (BRB) are reserved for those injured through the use of a motor vehicle and that there must be some causal relationship between the use of the motor vehicle and injuries sustained in order for BRB to be afforded.

In this case the lack of a causal relationship is not so clearly discernible as appeared in *State Farm Mut. Auto. Ins. Co. v. Rains,* Ky., 715 S.W.2d 232 (1986). The conditioning statements expressed in *Fann v. McGuffey,* Ky., 534 S.W.2d 770 (1975), continue to reflect that aspects of the Motor Vehicle Reparations Act necessitate further construction.

KRS 304–39.040 provides that BRB shall be paid only for injuries arising out of the "use" of a motor vehicle. The reference of "use," as defined in KRS 304–39.020(6), means any utilization of the motor vehicle as

a vehicle including occupying, entering into and *alighting from it.*

Appellant states that Ms. Dickerson's injuries were not caused by her use of the motor vehicle: (1) she had completed exiting the vehicle; (2) she did not strike any vehicle as she fell; and (3) her fall was caused by the ice on the parking lot. Thus the insurer maintains there was no causal connection between the injuries and the motor vehicle. While we agree with the insurer that the fall occurred within close geographic proximity to the vehicle, we disagree that Dickerson had relinquished all ties to it as a passenger. We determine that use of the vehicle has an extended meaning to be determined by the statutory phrase "alighting from it."

The word "alighting" simply means to descend and settle. This is a definitional phrase which is no stranger to a dictionary. Some reasoned observers, not confined to bird watching alone, may have noted the actions of a bird about to alight upon a less-than-sturdy tree limb. Resultantly not all motion of wings (or even tail) has ceased while the bird gains its equilibrium by settling upon the slender twig.

The term "alighting from" is to be given meaning herein. From other jurisdictions there are numerous cases interpreting identical language which have developed two distinct lines of cases and have focused on the presence or absence of physical contact. The line of cases requiring physical contact for recovery while alighting from a vehicle includes *McAbee v. Nationwide Mut. Ins. Co.,* 249 S.C. 96, 152 S.E.2d 731 (1967); *Wolf v. American Cas. Co. of Reading, Pa.,* 2 Ill. App.2d 124, 118 N.E.2d 777 (1954); *Madden v. Farm Bureau Mut. Ins. Co.,* 82 Ohio App. 111, 79 N.E.2d 586 (1948).

■ We avoid adoption of the "physical contact" only standard as such contact is inconsistent with the express policy and purpose of the Motor Vehicle Reparations Act. See KRS 304.39–010. As importantly, physical contact with the vehicle would deny coverage in situations where the contact is nothing more than a fortuitous event.

The other line of cases holds that physical contact alone is not the operative test for coverage. *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.,* Minn., 366 N.W.2d 271 (1985); *Day v. Coca-Cola Bottling Co.,* La. App., 420 So.2d 518 (1982); *Robson v. Lightning Rod Mut. Ins. Co.,* 59 Ohio App.2d 261, 393 N.E.2d 1053 (1978); *Nickerson v. Citizens Mut. Ins. Co.,* 393 Mich. 324, 224 N.W.2d 896 (1975). However, there are extremes to the "no physical contact" line of cases that are unrealistic and have extended BRB to an unduly broad proximity test. Illustrative is the case of *Joins v. Bonner,* 28 Ohio St.3d 398, 504 N.E.2d 61 (1986), wherein a minor passenger, who exited the passenger side of an automobile, was struck by a vehicle while attempting to reach the opposite curb. There it was held that this was within a reasonable geographic area of the vehicle and the passenger was therefore "alighting from it."

We determine that use of the standard based on the course of conduct reasonably incident to exiting and alighting from an automobile is preferable and, therefore, adopt a middle ground approach.

■ It is sufficient if the injury is a natural and reasonable incident or consequence of the use of the vehicle which, by this approach, determines that "alighting from" is a question of degree. As a general rule, there is a rational limit to the activity that may be said to be encompassed within the term "alighting from" which is the time and place at which the individual, after alighting, shows an intention, evidenced by an overt act based upon that intention, to undertake a new direction of activity.

We determine, therefore, that an individual has not finished "alighting" from a vehicle at least until both feet are planted firmly on the ground. *See Krueger v. Lumbermen's Mut. Cas. & Home Ins. Co.,* 112 Mich.App. 511, 316 N.W.2d 474 (1982).

There is an interpretation to be derived from the particular facts of this case as to whether the party was still in the process of alighting when injured or had completed alighting and gone on to become a mere pedestrian traversing a slippery parking lot. The only reason the coverage question is close is that it is honestly debatable whether

the alighting risk appellee exposed herself to by getting out of a car onto a slippery parking lot had been concluded. There is only one witness's (being appellee) undisputed testimony, but there are still different inferences to be drawn therefrom (evidenced by a dissent that is sure to follow). We agree with the Court of Appeals that the trial court erred in granting summary judgment as it is appropriate only when it appears that it would be impossible for respondent to produce evidence at trial warranting judgment in her favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 480 (1991), *citing Paintsville Hosp. Co. v. Rose*, Ky., 683 S.W.2d 255 (1985).

The opinion of the Court of Appeals is affirmed.

S. COMBS and LAMBERT, JJ., concur.

LEIBSON, J. concurs by separate opinion in which STEPHENS, C.J., joins.

SPAIN and WINTERSHEIMER, JJ., dissent and would reverse the Court of Appeals and affirm the trial court's summary judgment.

LEIBSON, Justice.

Respectfully, I concur in results, but wish to state my reasons separately.

I would affirm the Court of Appeals' reversal of the summary judgment only because there was some evidence from which to infer that the claimant had not physically completed the act of alighting from the car by breaking contact and taking a step. If she had not yet achieved the status of a pedestrian, she is still in the act of "alighting from" the vehicle.

We should decide the question of coverage for BRB benefits in this case on the *positional risk theory* which I advanced in *State Farm Mut. Auto. Ins. Co. v. Rains*, Ky., 715 S.W.2d 232 (1986) and *Kentucky Farm Bureau Mut. v. McKinney*, Ky., 831 S.W.2d 164 (1992): we should recognize coverage exists, or deny coverage exists, based on *where* the injury occurs rather than what caused the injury, just as we do in deciding whether an injury is work related in workers' compensation cases.

STEPHENS, C.J., joins.