Brenda FIELDS, Appellant,

v.

BELLSOUTH TELECOMMUNICATIONS, INC., Appellee.

No. 2001–SC–0477–DG.

Supreme Court of Kentucky.

Dec. 19, 2002.

William B. Hoffman, Paul A. Casi II, Hoffman & Casi, PLLC, Louisville, for Appellant.

Douglass Farnsley, Jamie K. Neal, Stites & Harbison, PLLC, Dorothy J. Chambers, Louisville, for Appellee.

Opinion of the Court by Justice JOHNSTONE.

Appellant, Brenda Fields, appeals from a Court of Appeals' opinion that affirmed the trial court's grant of summary judgment in favor of Appellee and underlying defendant, BellSouth Telecommunications, Inc. The sole issue in this case is whether Ms. Fields was "entering into" her vehicle within the meaning of KRS 304.39–020(6), when she tripped and fell over a utility pole anchor device.

On March 14, 1998, Ms. Fields was injured when she tripped over a guy-wire anchor for a utility pole and fell onto a Tumbleweed Restaurant parking lot. On March 11, 1999, Ms. Fields filed suit against Tumbleweed and LG & E, which owned the anchored utility pole. Discovery revealed that the guy-wire anchor device was owned and maintained by Bell-South. Ms. Fields then amended her complaint on July 1, 1999, to include Bell-South as a defendant to the suit. Bell-South moved for summary judgment on grounds that the claim against it was barred by the statute of limitations. After the trial court granted the motion and the judgment became final, Ms. Fields appealed to the Court of Appeals. The Court of Appeals affirmed the summary judgment of the trial court. We granted discretionary review and, for the reasons set forth below, we reverse and remand.

Ordinarily, a suit for negligent injury must be brought within one year after the "cause of action accrued." KRS 413.140(1)(a). But KRS 304.39–060(6) "extends the statute of limitations to two years for actions 'with respect to accidents occurring in this Commonwealth and arising from the ownership, maintenance or use of a motor vehicle,' when not 'abolished' by the Act." *Troxell v. Trammell*, Ky., 730 S.W.2d 525, 527 (1987), quoting *Bailey v. Reeves*, Ky., 662 S.W.2d 832, 833–34 (1984). Thus, if the one-year statute of limitation applies, the suit against BellSouth is time barred. But, if the two-year statute of limitation applies, then the suit was timely filed and should be permitted to proceed. The resolution of the question of which limitation period applies turns on whether Ms. Fields was "using" her vehicle within the meaning of the MVRA when she slipped and fell.

Under the MVRA, " '[U]se of motor vehicle' means any utilization of the motor vehicle as a vehicle including occupying, *entering into*, and alighting from it." KRS 304.39–020(6) (emphasis added). The determination of whether Ms. Fields was "using" her vehicle is made in light of the basic rule of statutory construction that the "MVRA is to be liberally interpreted in favor of the accident victim." *Lawson v. Helton Sanitation, Inc.*, Ky., 34 S.W.3d 52, 62 (2000).

A number of courts have addressed the issue of what "entering into" means. *See generally* Robert Joy, *Annotation: What Constitutes "Entering" or "Alighting From" Vehicle Within Meaning of Insurance Policy, or Statute Mandating Insurance Coverage*, 59 A.L.R.4th 149 (1989) (collecting cases). Not surprisingly, the results of these decisions are not uniform across jurisdictions. Nonetheless, some commonalities emerge. Two of these are that the issue is to be decided on a case-by-case basis and that "entering into" does not require proof that the plaintiff was physically inside the vehicle, either in whole or in part.

The dilemma in these cases appears to be in determining when a person's approach to a vehicle, *i.e.*, the preparation to entry, transforms into the process of entering into the vehicle. To establish a certain definiteness to making this determination, a number of courts hold that "entering into" a vehicle "begins, at the earliest, when physical contact with the vehicle is made with intent to enter." *Aversano v. Atlantic Employers Insurance Co.*, 290 N.J.Super. 570, 575, 676 A.2d 556 (1996). *Accord Floyd v. J.C. Penney Casualty Insurance Co.*, 193 Ga.App. 350, 387 S.E.2d 625, 626 (1989). Likewise, after a careful and thoughtful grammatical analysis, the Oregon Supreme Court held that a "person is 'entering into' the insured car when a part of that person makes physical contact with the car in a manner that in the ordinary course would lead directly to entrance or penetration into the car." *Marcilionis v. Farmers Insurance Co. of Oregon*, 318 Or. 640, 871 P.2d 470, 472–73 (1994). The contact requirement is implicated by decisions in other courts.

In *King v. Aetna Casualty & Surety Co.*, 118 Mich.App. 648, 325 N.W.2d 528 (1982), the Michigan Court of Appeals held that a claimant who slipped and fell on ice while reaching to unlock his car door was only preparing the enter the vehicle. *Id.* at 530. But a year later in *Teman v. Transamerica Insurance Co. of Michigan*, 123 Mich.App. 262, 333 N.W.2d 244 (1983), the same court held that a claimant who had his foot on the back ledge of a truck while attempting to open the door to enter was in the process of entering into the vehicle. *Id.* at 245. Contact with the vehicle appears to be the crucial distinction in these two cases. In *Goodwin v. Lumbermens Mutual Casualty Co.*, 199 Md. 121, 85 A.2d 759 (1952), the Maryland Court of Appeals held that a claimant who was standing beside a vehicle and waiting to enter while another held the door open for her was "entering into" the vehicle within the meaning of an insurance contract. *Id.* at 764. *See also Salamone v. Regency Palace*, 337 N.J.Super. 374, 766 A.2d 1231, 1234 (2000) (valet was agent of the insured for purposes of "entering into" a vehicle).

■ In keeping with the above authority, we hold that process of "entering into" a vehicle can begin no sooner than when a person, or that person's agent, makes contact with the vehicle with the intention of entering the vehicle. This determination is not inconsistent with our holding in *West American Insurance Co. v. Dickerson*, Ky., 865 S.W.2d 320 (1993), which rejected the physical contact standard for determining when a person is "alighting from" a vehicle within the meaning of the MVRA. *Id.* at 322.

In *Dickerson*, we stated:

It is sufficient if the injury is a natural and reasonable incident or consequence of the use of the vehicle which, by this approach, determines that "alighting from" is a question of degree. As a general rule, there is a rational limit to the activity that may be said to be encompassed within the term "alighting from" which is the time and place at which the individual, after alighting, *shows an intention, evidenced by an overt act based upon that intention, to undertake a new direction of activity.*

We determine, therefore, that an individual has not finished "alighting" from a vehicle at least until both feet are planted firmly on the ground.

*Id.* at 322 (emphasis added).

■ Thus, just as the process of alighting from a vehicle ends with evidence of an overt act, the process of entering into a vehicle begins with evidence of the overt act of making contact with the vehicle with the intention of entering it. Turning to

the facts of this case, it is readily apparent that, under this standard, there was sufficient evidence to support a finding that Ms. Fields was entering into her vehicle when she tripped and fell.

According to her deposition testimony, after dinner with friends, Ms. Fields and her husband left the Mellwood Avenue Tumbleweed and walked to their car. Upon reaching the rear of the car, they stopped so that Mr. Fields could give Ms. Fields the keys to the car. With the keys in hand, Ms. Fields walked to the driver side door, inserted the key into the lock, and opened the door. The interior light of the car came on. Ms. Fields then took a step backward in order to open the door wide enough to step inside the car. She tripped over the anchor device on that one, backward step, fell, and broke her hip.

The testimony above establishes both Ms. Fields' contact with the vehicle and her intention to enter it. Thus, the process of entering into the vehicle had already begun when she fell. The unfortunate fall was the only reason the process did not culminate with an actual entry. We do note that she stated that she broke contact with the vehicle before she fell, but that is of no consequence. The step she took backwards was but part of the process for entering into the vehicle, which she stated was necessary to complete the process. Thus, there was evidence that when she tripped and fell, Ms. Fields was "entering into" her vehicle within the meaning of the MVRA. *See Shanafelt v. Allstate Insurance Co.*, 217 Mich.App. 625, 552 N.W.2d 671, 674 (1996) (holding the same on nearly identical facts). Therefore, we hold that the trial court erred in granting summary judgment. *Steelvest v.*

*Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 483 (1991); CR 56.03.

For the reasons set forth above, we reverse the opinion of the Court of Appeals and remand this case to the trial court with directions to vacate its order granting summary judgment to BellSouth.

COOPER, GRAVES, and STUMBO, JJ., concur.

KELLER, J., concurs in result only by separate opinion, with LAMBERT, C.J., joining that concurring opinion.

WINTERSHEIMER, J., concurs in result only without separate opinion.

Concurring Opinion by Justice KELLER.

Although I agree with the majority's ultimate conclusion that the Jefferson Circuit Court erred when it granted summary judgment to Appellee, I write separately because I disagree with the majority's holding that the "process of 'entering into' a vehicle can begin no sooner than when a person, or that person's agent, makes contact with the vehicle with the intention of entering the vehicle."[1] While the majority asserts that its holding is "not inconsistent with" this Court's previous interpretation of KRS 304.39–020(6)'s "alighting from" language in *West American Insurance Co. v. Dickerson,*[2] today's majority's interpretation interprets the process of "entering into" a motor vehicle more narrowly than the *Dickerson* court interpreted the process of "alighting from" a motor vehicle.

In *Dickerson,* the Court recognized that the "alighting from" language in KRS 304.39–020(6) referred to a process, or "course of conduct reasonably incident to

---

1. Majority Opinion, 91 S.W.3d 571, 573 (2003).

2. Ky., 865 S.W.2d 320 (1993) (hereinafter *"Dickerson"*).

exiting and alighting from an automobile"[3] and held that the process ended when "the individual, after alighting, shows an intention, evidenced by an overt act based upon that intention, to undertake a new direction of activity."[4] Although today's majority recognizes that, logically speaking, the process of "entering into" a vehicle is parallel in scope to the process of "alighting from" a vehicle—i.e., an individual *begins* the process of "entering into" a motor vehicle when he or she shows an intention, evidenced by an overt act based on that intention, to enter into the vehicle—the majority opinion pays mere lip-service to *Dickerson* while implicitly concluding that physical contact with the vehicle is the only "overt act" which evidences such an intention.[5] I see no reason for such a narrow interpretation—especially in a world where technological developments such as "keyless entry" permit a driver to unlock and open car doors, and even trigger the ignition, by remote. Accordingly, rather than adopting the physical contact requirement that this Court explicitly rejected in *Dickerson*,[6] I believe courts should, on a case-by-case basis, review the sufficiency of evidence demonstrating an overt act in furtherance of a person's intent to enter a vehicle. In the case at bar, I agree that summary judgment was improper, and I thus concur in the result reached by the majority.

LAMBERT, C.J., joins this concurring opinion.

---

3. *Id.* at 322.

4. *Id.*

5. *See* Majority Opinion, *supra* note 1 at 573 ("Thus, just as the process of alighting from a vehicle ends with evidence *of an overt act,* the process of entering into a vehicle begins with evidence *of the overt act of making contact with the vehicle* with the intention of entering it." (emphasis added)).

6. *Dickerson, supra* note 2 at 322.