NOT FOR FULL-TEXT PUBLICATION
File Name: 09a0587n.06

NO. 07-6302

**FILED**
**Aug 20, 2009**
LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

ALEXIS MORELL,

      **Plaintiff-Appellee,**

v.

STAR TAXI,

      **Defendant,**

**and**

AMERICAN SERVICE INSURANCE
COMPANY,

      **Defendant-Appellant.**

_____/

**ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY**

**BEFORE:** **MARTIN, SUHRHEINRICH, and WHITE, Circuit Judges.**

      **SUHRHEINRICH, Circuit Judge.** Defendant-Appellant American Service Insurance

Company ("American") appeals the judgment of the district court granting summary judgment to

Plaintiff-Appellee Alexis Morell on her claim against American for a declaration that Defendant Star

Taxi's insurance policy with American provided coverage for Morell's damages. We reverse.

**I. Background**

**A. Facts**

      Morell claims that on May 21, 2006, she took a Star Taxi cab home to Campbell County

Kentucky from Mount Adams in Cincinnati, Ohio. Star Taxi is insured by American. Morell alleges

that the taxi driver dropped her off in front of her home, but then followed her into her apartment and raped her. She alleges both physical and emotional injuries as a result.

Star Taxi has an "American Auto Policy" from American. It provides in relevant part:

COVERAGE A–BODILY INJURY LIABILITY
COVERAGE B–PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums, except for punitive and exemplary damages, which the insured will become legally obligated to pay as damages because of
      A. bodily injury or
      B. property damage
to which this insurance applies, caused by an accident and arising out of the ownership, maintenance or use of an owned vehicle.

Morell brought suit in state court against both Star Taxi and American. She sued Star Taxi for claims of negligent hiring and supervision and vicarious liability. In her claim against American, Morell sought a declaratory judgment that the American Auto Policy purchased by Star Taxi from American provided coverage for any damages she might recover in her tort action against Star Taxi. American removed this case to the federal district court in the Eastern District of Kentucky on the basis of diversity jurisdiction.[1] American filed a counterclaim against Morell and a crossclaim against Star Taxi "for declaratory judgment pursuant to 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57, to determine an actual controversy between [American] and Star Taxi." American also raised standing as an affirmative defense.

American later filed a motion to bifurcate discovery and trial of Morell's claims against American and the insured, Star Taxi. Morell did not object. Morell in turn filed a motion to hold

---

[1]Morell is a Kentucky citizen, Defendant Star Taxi is an Ohio corporation, and Defendant American is an Illinois corporation.

the personal injury portion of the claim in abeyance. American did not object. The district court granted both motions.

Thereafter, Morell filed a motion for summary judgment against American arguing in relevant part that the American insurance policy issued to Star Taxi provided coverage because Morell's injury arose from the ownership, maintenance or use of a motor vehicle. American filed a response and cross-motion for summary judgment against Morell. American asked "that an order be issued declaring that it has neither a duty to defend nor indemnify Star Taxi in the remainder of the claims in this case." American asserted that Morell lacked standing, and argued in the alternative that Morell's claim was not covered under its policy.

The district court granted summary judgment to Morell and denied American's cross-motion for summary judgment. It held in pertinent part that

> the definition of "accident" provided by the policy is unambiguous. The policy specifically defines "accident" to "mean[] a sudden event neither expected nor intended from the standpoint of the insured which results in **bodily injury** or **property damage**." Thus, the court must look to whether the insured, Star Taxi, expected or intended the event to occur that resulted in the plaintiff's injury. Clearly, Star Taxi did not expect or intend for its driver to sexually assault a passenger.

The district court further held that

> the injury alleged arose out of the "ownership, maintenance, or use of an **owned vehicle**" as required by the policy. Here, the events alleged are causally connected to the use of the car. Specifically, it was plaintiff's use of the taxi that caused her to come into contact with its driver: she was in the taxi because it was being used as a common carrier, the driver used the taxi as his means of selecting his victim, and he only knew the location of plaintiff's apartment because of her use of the taxi. In addition, the driver was on the premises as a result of his duties as a common carrier to safely deliver the plaintiff to her home and he had not yet driven away. Thus, the attack was still part of the series of events surrounding the use of the taxi. . . . As discussed above, the court finds the injuries sustained by the plaintiff at the hands of the taxi driver are sufficiently connected to her use of the taxi and, therefore, American owes Star Taxi coverage under the policy.

The district court did not address Morell's standing. The district court entered a conforming judgment the same day, which included the required findings for finality under Fed. R. Civ. P. 54(b).

Meanwhile, American moved for, and was granted, a default judgment against Star Taxi. The order of default judgment also "ORDERED AND ADJUDGED that this Order shall neither affect nor prejudice the Plaintiff's claims against American for coverage under the policy of insurance at issue."

American filed a timely notice of appeal from the judgment granting Morell's motion for summary judgment and denying American's cross-motion for summary judgment.

## II. Analysis

This Court reviews a district court's grant of summary judgment de novo. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## A. Standing

American claims that Morell lacked standing to bring a direct action against American that seeks a declaration of coverage under an automobile liability policy issued by American to Star Taxi. American raised the issue in its summary judgment motion, but the district court did not address it.

This Court reviews the question of standing de novo. *See Schultz v. United States*, 529 F.3d 343, 349 (6th Cir.), *cert. denied*, 129 S. Ct. 742 (2008). When jurisdiction is premised on diversity of citizenship, a plaintiff must have standing under both Article III and state law in order to maintain

a cause of action. *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173 (2d Cir. 2005) (and cases cited therein); *Metro. Exp. Servs. Inc. v. City of Kansas City, Mo.*, 23 F.3d 1367, 1369-70 (8th Cir. 1994) (and cases cited therein); *see also Myers v. Richland County*, 429 F.3d 740, 749 (8th Cir. 2005) (stating that a federal court cannot hear the plaintiff's state breach of contract claim unless he has standing to sue under state law); *Owens of Ga., Inc. v. Shelby County*, 648 F.2d 1084, 1088-90 (6th Cir. 1981) (applying state law to determine whether unsuccessful bidder had standing to challenge a contract award to another bidder). A federal court sitting in diversity applies the substantive law of the forum state, which includes its choice of law rules. *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003). Here, the parties agree that Kentucky law applies to the interpretation of Star Taxi's automobile insurance with American.

"Kentucky is not a 'direct action' jurisdiction." *State Auto. Mut. Ins. Co. v. Empire Fire & Marine Ins. Co.*, 808 S.W.2d 805, 807-08 (Ky. 1991); *Cuppy v. Gen. Accident Fire & Life Ins. Corp.*, 378 S.W.2d 629, 632 (Ky. 1964). This means that except in cases of insolvency or bankruptcy, an injured person has no direct right of action against an insurance company until after a judgment has first been obtained against the insured. *Cuppy*, 378 S.W.2d at 632; *Ford v. Ratliff*, 183 S.W.3d 199, 203 & n.10 (Ky. Ct. App. 2006). *See also Chambers v. Ideal Pure Milk Co.*, 245 S.W.2d 589, 591 (Ky. 1952); *Kentucky Hosp. Ass'n Trust. v. Chi. Ins. Co.*, 978 S.W.2d 754, 755-56 (Ky. Ct. App. 1998) (stating that "[a]n insured must become legally obligated to pay pursuant to terms of the insurance contract"). Morell acknowledges that Kentucky is not a direct action state, but nonetheless claims that because she has a right of action once a judgment against Star Taxi is obtained and remains unpaid, she has standing to sue American directly.

Whether or not it may have initially been proper to decline jurisdiction on prudential grounds, because American filed a counterclaim against Morell upon removal, we agree that she has standing in this case. *See Md. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (holding that an actual case or controversy existed between insurer who brought declaratory judgment action against insured and injured third party where injured party was entitled under state law to bring action against the insurer if he obtained a judgment against the insured party); *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 354 & n.6 (3d Cir. 1986) (holding that when an insured party is dismissed from a declaratory judgment action brought by the insurer against the insured and the injured third party to determine coverage, the injured third party has standing to remain in the suit and defend the action; applying *Md. Cas. Co.*); *Hawkeye-Security Ins. Co. v. Schulte*, 302 F.2d 174, 177 (7th Cir. 1962) (same; reasoning that when an insured party is dismissed from a declaratory judgment action to determine coverage, an injured third party has standing to remain in the suit and defend the action because "[i]t would be anomalous to hold . . . that an actual controversy exists between [the injured third party and] the [insurer,] and yet deny [the injured third party] the right to participate in the controversy"); *Vt. Mut. Ins. Co. v. Everette*, 875 F. Supp. 1181, 1185 (E.D. Va. 1995) (same; applying *Md. Cas. Co., Schulte,* and *Rauscher* to hold that case or controversy existed in declaratory judgment action brought by insurer between liability insurer and the injured third party after default judgment had been entered against insureds). In other words, there is a live controversy between American and Morell because American sought declaratory relief against Morell and Star Taxi.

## B. Coverage

American argues that Morell's injuries did not arise out of the "use" of a motor vehicle as defined under the terms of the policy and Kentucky law. The district court found that Morell's and

the driver's use of the taxi caused Morell to come into contact with the driver such that her injuries were sufficiently connected to the use of the taxi.

As noted above, Kentucky law applies. *Westfield*, 336 F.3d at 506. The interpretation of an insurance contract is a matter of law to be decided by the court. *Id.* at 507 (citing *Stone v. Ky. Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 810 (Ky. Ct. App. 2000)). Because the Kentucky Supreme Court has not decided whether an assault and rape in a private residence by a taxi driver implicates coverage under the taxi company's automobile insurance policy, we must predict how it would rule if presented with the issue. *See id.* Several decisions from that court are instructive on the question of causation.

Foremost are the consolidated cases of *State Farm Mut. Auto. Ins. Co. v. Rains*, 715 S.W.2d 232 (Ky. 1986), and *Smith v. State Farm Mut. Auto. Ins. Co.*, 715 S.W.2d 232 (Ky. 1986), where the Kentucky Supreme Court analyzed the phrase "arising out of the use of a motor vehicle" in the Kentucky Motor Vehicle Reparations Act, Ky. Rev. St. Ann. §§ 304.39-101-140, which provides for basic reparation benefits. In *Rains*, the insured sued the automobile insurer for basic reparation benefits for injuries he sustained after being hit on the head with a baseball bat while attempting to enter his automobile. In *Smith*, the insureds sought basic reparation benefits after being shot by the deranged brother of the insured through the rear window of a motor vehicle on a public highway. *Id.* at 233.

The Kentucky Supreme Court summarized that "[t]he plain language of the statutes provides for the payment of basic reparation benefits to the victims of *motor vehicle accidents* for injuries *arising out of the use of a motor vehicle*." *Id.* The Court framed the issues as "(1) whether the

injured persons were motor vehicle accident victims, and (2) whether their injuries arose out of the use of a motor vehicle." *Id.*

The Court concluded in both cases that the injured persons were not motor vehicle accident victims and that their injuries did not arise out of the use of a motor vehicle. It reasoned that

> [a]lthough the injuries to each of the persons involved were caused by intentional acts, they contend that, as to them, the injuries were accidents because they were wholly unexpected and unforeseeable. Conceding for the purposes of argument, but not deciding, that the injured persons were the victims of an accident, they fail to establish that they were victims of a motor vehicle accident. The accident claimed by Rains was the deliberate, but unexpected, blow from a baseball bat. The accident claimed by Smith and Marshall was the intentional shooting by a third party, albeit unexpected and unforeseen by them. In both cases the only connection between the victims and a motor vehicle was incidental. *No motor vehicle accident contributed to their injuries. It follows that they were not victims of a motor vehicle accident.*

> It seems equally clear that the injuries did not arise out of the use of a motor vehicle. The contention is made that each of the injured persons was using a motor vehicle because the term "use" is defined in K.R.S. 304.39-020(6) as "any utilization of the motor vehicle as a vehicle, including occupying, entering into, and alighting from it." Even if it be conceded, however, that the injured were using a motor vehicle at the time they were injured, it remains their burden to demonstrate that the injuries arose out of the use of the vehicle.

> They interpret the statutes involved to mean that reparation benefits are payable to one who is injured while using a motor vehicle without regard to whether the use of the motor vehicle had any causal connection with the injury.

> K.R.S. 304.39-030(1) and 040(2) do not provide for the payment of benefits to persons injured while using a motor vehicle. *They provide for payment of benefits, not to all persons who are injured while making use of a motor vehicle, but only to those persons injured while making use of a motor vehicle whose injuries arose out of the use of the motor vehicle.*

*Id.* at 233-34 (some emphases added).

The *Rains* court relied on the Kentucky Supreme Court's earlier decision in *United States Fidelity & Guaranty Co. v. Western Fire Insurance Co.,* where the Court interpreted an insurance

policy providing coverage for "bodily injury arising out of the use of the automobile." *Rains*, 715 S.W.2d at 234 (citing *U.S. Fid. & Guar.v. W. Fire Ins. Co.*, 450 S.W.2d 491, 493 (Ky. 1970)).[2]  In *United States Fidelity*, a passenger in a motor vehicle was injured when a pistol was accidentally discharged in the car, and it was undisputed that the accidental discharge of the pistol was not caused by the movement or operation of the car.  The *United States Fidelity* court held that "the injury in the instant case was not sufficiently use-connected to be considered reasonably to have been within the contemplation of the parties to the automobile insurance contracts here involved." *U.S. Fid. & Guar.*, 450 S.W.2d at 493.  *See also Ins. Co. of N. Am. v. Royal Indem. Co.*, 429 F.2d 1014, 1018 & n.8 (6th Cir. 1970) (applying Kentucky law; noting that "[t]he term 'use' is the general catch-all of the insuring clause, designed and constructed to include all proper uses of the vehicle not falling within [operation or maintenance].  It is limited to the purpose for which the coverage is designed"). *Id.* at 234.[3]

Like the injured parties in *Smith* and *Rains*, Morell is not a victim of a motor vehicle accident because the taxi did not contribute to her injuries.  Further, although her injuries occurred just after making use of the taxi, those injuries did not "arise out of" her "use" of the taxi. *Rains*, 715 S.W.2d at 234.  Thus, based on the foregoing guidance from *Smith, Rains*, and *United States Fidelity &*

---

[2]The *Rains* Court "[saw] no reason why a different interpretation should apply [to the Motor Reparations Act]." *Rains*, 715 S.W.2d at 234.

[3]The Kentucky Court of Appeals applied the rule of *Rains* and *United States Fid. & Guar.* to an insured who was driving her automobile when she was struck in the eye by an object propelled by a lawnmower near the street. *See Ky. Farm Bureau Mut. Ins. Co. v. Hall*, 807 S.W.2d 954, 955-56 (Ky. Ct. App. 1991).  The appeals court held that the insured was entitled to benefits because she was using a motor vehicle at the time of the injury, and unlike the insureds in *Rain* and *Smith*, "(who were injured by intentional acts), her injury resulted from a pure unintentional accident." *Id.* at 956.  In other words, she was covered "from accidental injury which [was] causally related to her operation of the motor vehicle." *Id.*

*Guaranty*, we conclude that if presented with the issue presented in this case, the Kentucky Supreme Court would find that Morell's injuries are not covered under the terms of the auto policy at issue. *See also Farrer v. U.S. Fid. & Guar. Co.*, 809 So.2d 85, 95 (Fla. Ct. App. 2002) (holding that sexual assault did not "arise out of" the use of a motor vehicle although it occurred there, because it did not arise out of the inherent nature of the vehicle and the automobile did not itself produce the injury).

The district court distinguished the foregoing cases on the grounds that "it was not the driver of the motor vehicle who inflicted the injuries complained of although the motor vehicle was physically associated with the assault." This analysis is not consistent with the Kentucky precedent. First and foremost, "physical association with the vehicle" is not the appropriate test. Rather, the focus is the causal connection between use of the vehicle and the injury. Neither is the driver's role a key factor. Thus, we think it clear that under *Rains*, *Smith*, and *United States Fid. & Guar.,* Morell's alleged injuries are not covered under the American auto liability policy.

American also argues that there is no coverage because Morell's injuries fall outside the "time-and-place limitation" on her "use" of the taxi cab. This argument finds support in the Kentucky Supreme Court's decision in *West American Insurance Co. v. Dickerson*, 865 S.W.2d 320, 321 (Ky. 1993). In *Dickerson*, the injured party slipped and fell on an icy parking lot when she exited an automobile. The insurer argued that the injuries were not caused by her use of the car because she had completed exiting the vehicle, did not strike the vehicle as she fell, and her fall was caused by the ice in the parking lot. *Id.* at 321. The Kentucky Supreme Court disagreed with the insurer's argument that the injured party had relinquished all ties to the motor vehicle as a passenger,

"determin[ing] that use of the vehicle has an extended meaning to be determined by the statutory phrase 'alighting from it.'" *Id.* at 322.[4]  The *Dickerson* court held that

> [i]t is sufficient if the injury is a natural and reasonable incident or consequence of the use of the vehicle which, by this approach, determines that "alighting from" is a question of degree.  As a general rule, there is a rational limit to the activity that may be said to be encompassed within the term "alighting from" which is the time and place at which the individual, after alighting, shows an intention, evidenced by an overt act based upon that intention, to undertake a new direction of activity.
>
> We determine, therefore, that an individual has not finished "alighting" from a vehicle at least until both feet are planted firmly on the ground.

*Id.*

Similarly, even under an expanded definition of "use," Morell had completed her use of the taxi "and gone on to become a mere pedestrian" by the time she was raped.  *See id*. at 322.  She had exited the taxi and walked into her home before the alleged rape took place.  Under the *Dickerson* framework, she had relinquished any connection she had to the taxi and "undertaken a new direction of activity."  *Id.*  In other words, as in *Rains*,  Morell's only causal connection to the vehicle is that she would not have been injured except for the fact that she rode in it.  *Cf. Rains* 715 S.W.2d at 234 (stating that "[t]he only causal connection suggested by Rains' brief is that he would not have been injured except for the fact that his vehicle was parked at the place it was and that he returned to that place to make use of his vehicle," which failed to suffice as a showing that his use of the vehicle caused the injury).  *See also R.A. Stuchbery & Others Syndicate 1906 v. Redland Ins. Co.*, 66 Cal. Rptr. 3d 80 (Cal. Ct. App. 2007) (holding that sexual assault of a passenger by a shuttle driver in the driver's apartment did not result from use of a motor vehicle because use of vehicle was not the

---

[4]The Motor Vehicle Reparations Act defines "use" as including "occupying, entering into and *alighting from*" the vehicle.  Ky. Rev. St. Ann. § 304-39.020(6) (emphasis added).

predominating cause or substantial factor in the passenger's injuries but merely used to drive the passenger to the driver's apartment).

*Westfield*, upon which Morell relies, is distinguishable.[5]  There, a panel of this Court predicted that the Kentucky Supreme Court would hold that an insured carpet cleaning business's alleged negligent hiring of a former employee who murdered the insured's customer was a qualifying "occurrence" under a general liability insurance policy, which defined "occurrence" as an "accident." *See Westfield*, 336 F.3d at 503.  The Court reasoned that although the insured's act of negligently hiring and retaining the employee was intentional, it was "not substantially certain to result in some injury," so it was accidental, rather than intentional conduct.  *Id.* at 510.  However, *Westfield* involved a general commercial liability policy.  Here, the policy provides coverage only for bodily injury or property damage caused by the use of a vehicle owned by Star Taxi.

---

[5]Morell cites *Maryland Casualty. Co. v. Baker*, 200 S.W.2d 757, 761 (Ky. 1947).  There the Kentucky Supreme Court held that one of two insurance policies at issue afforded coverage for injuries sustained in an intentional assault by a taxi driver. *Baker*, 200 S.W.2d at 762.  However, the basis for the Court's decision rested upon its construction of Ky. Rev. St. Ann. § 281.460, which required a taxi company to procure insurance "binding the obligor to pay any final judgment rendered against" a taxi company for "any act or omission connected with the operation of motor vehicles."  *Id.* at 760.  The Court held that the statute required the insurer to pay the judgment in favor of the plaintiff against the taxicab operator. *Id*. at 762.  However, the statute in that case, Ky. Rev. Stat. Ann. § 281.460, has been repealed.  The current statute, Ky. Rev. St. Ann. § 281.655, does not require a tax company's insurer to "pay any final judgment."  Instead, the current law merely requires the taxi company to maintain insurance with the same minimum liability limits as is required of all owners and operators of motor vehicles under the Motor Vehicle Reparations Act. *See* Ky. Rev. St. Ann. § 281.655(12); Ky. Rev. St. Ann. § 304.39-010(1).  Further, the statutory language has been changed from "any act or omission connected with the operation of motor vehicles" to "damages . . . arising out of ownership, maintenance, use, loading or unloading of the insured vehicle."

Because we are confident that the Kentucky Supreme Court would conclude, based on its precedent in *Rains, Smith*, *United States Fidelity & Guaranty*, and *Dickerson*, that Morell's alleged injuries were not caused by the "use" of the taxi as defined in American's policy, we will not address its public policy arguments.

### III. Conclusion

The judgment of the district court is **REVERSED**, and the matter is **REMANDED** with instructions to enter judgment in favor of American.