NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0030n.06

No. 12-1046

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ABDULLAH EL-SEBLANI | ) | |
| | ) | **FILED** |
| Plaintiff - Appellant | ) | **Jan 07, 2013** |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| INDYMAC MORTGAGE SERVICES, a division of OneWest Bank, FSB; ONEWEST, FSB, fka IndyMac Federal Bank | ) | |
| | ) | |
| Defendants - Appellees | ) | |

Before: DAUGHTREY, COLE, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** OneWest Bank ("OneWest") foreclosed on Abdullah El-Seblani's home in Dearborn Heights, Michigan in 2010. El-Seblani filed this civil action against OneWest and its subsidiary, IndyMac Mortgage Services ("IMS"), to contest the foreclosure under a variety of statutory and common-law theories. He claims that he properly accepted a mortgage-modification offer from IMS before the foreclosure sale of his home took place. The district court granted OneWest's and IMS's motion for summary judgment. We affirm.

**I.**

**A.**

-1-

El-Seblani purchased his home in 2007 using a loan from OneWest's predecessor, IndyMac

Bank ("IndyMac"). IndyMac secured the loan through a mortgage on El-Seblani's property. The

mortgage identified Mortgage Electronic Registration Systems ("MERS") as the "mortgagee" and

"nominee for Lender and Lender's successors and assigns," and IndyMac as the "Lender."

El-Seblani began missing mortgage payments in 2010. MERS assigned all of its interest in

El-Seblani's mortgage to OneWest on June 22, 2010, and the county register of deeds recorded the

assignment on July 1. The day after MERS assigned its interest to OneWest, counsel for OneWest

sent El-Seblani a letter, via both first-class and certified mail, notifying him of his default and

providing information on his right to a meeting on loan modification. The letter stated that El-

Seblani had the right to "request a meeting with [OneWest's counsel] to attempt to work out a

modification of the mortgage loan to avoid foreclosure" within fourteen days. El-Seblani asserts

that he never received this letter, but this assertion is not supported by an affidavit, declaration, or

similar evidence. A published notice containing analogous information appeared in the *Detroit Legal

News* on June 25, 2010.

OneWest and IMS received a fax from a third-party loan modification group authorizing

discussions about El-Seblani's situation on July 7. On July 14, IMS sent El-Seblani a letter stating

that he "may be eligible for a loan modification," along with a proposed agreement, based on El-

Seblani's stated income and liabilities. The letter states in relevant part:

> This offer is valid for a limited time. The enclosed modification agreement
> must be signed and returned to IndyMac Mortgage Services by 7/28/2010.
>
> If you accept this offer, you will need to sign and return the enclosed
> modification agreement along with your first monthly payment in the enclosed

> prepaid envelope. The principal and interest portion of your monthly payment will be $856.45 and will change according to paragraph two on the enclosed modification agreement. . . .

> Please sign and return the enclosed modification agreement on or before the above mentioned expiration date.

On July 31, 2010, OneWest received a check for $856.45 from El-Seblani, but not the signed modification agreement. According to Charles Boyle,[1] OneWest's vice president, OneWest placed the check in a suspense account "because the loan modification offer had expired." OneWest did not receive the signed agreement until August 18, 2010. The bank's notes also indicate that El-Seblani did not qualify for the loan modification program because he understated his liabilities by twenty percent. While this was taking place, OneWest and IMS published notice of their intent to foreclose by advertisement in the *Detroit Legal News* on July 22, July 29, August 5, and August 12.

On August 30, 2010, IMS sent El-Seblani a letter notifying him that his request for a mortgage modification could not be completed "due to an imminent foreclosure sale of the property." Fannie Mae purchased El-Seblani's home at a sheriff's sale on September 2, 2010. In an "affidavit of compliance" attached to the sheriff's deed, Marshall Issacs, an attorney for OneWest, certified that all proper legal measures had been taken prior to foreclosure and "[t]hat neither the borrower(s) nor a housing counselor requested [OneWest's counsel] set up a meeting to modify the mortgage, within

---

[1]El-Seblani argues that we should not consider Boyle's affidavit because it did not meet the requirements of Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support . . . a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.") El-Seblani waived this argument by not raising it in the district court. *Moore v. Holbrook*, 2 F.3d 697, 701–02 (6th Cir. 1993) (enforcing a similar bar under Rule 56(c)(4)'s predecessor, Rule 56(e)).

the required time period." The six-month period in which El-Seblani could redeem his mortgage after the sheriff's sale expired on March 2, 2011. *See* Mich. Comp. Laws § 600.3240(8) (defining redemption period for "a mortgage . . . of residential property . . . if the amount claimed to be due on the mortgage is more than 66-2/3[%] of the original indebtedness secured by the mortgage").

**B.**

El-Seblani filed a complaint against OneWest and IMS in Wayne County Circuit Court on February 4, 2011. The six counts in the complaint are: (1) violation of the Michigan Mortgage Brokers, Lender and Servicer Lending Act ("Mortgage Act"), Mich. Comp. Laws §§ 445.1651–84; (2) breach of contract; (3) promissory estoppel; (4) "misrepresentation"; (5) violation of Mich. Comp. Laws § 600.3205a (2010); and (6) "exemplary damages." El-Seblani's prayer for relief asked the state circuit court to "[s]tay all proceedings for possession including eviction of Plaintiff," "[s]et aside [the] sheriff's sale," and "[d]eclare [the] mortgage foreclosure void" as relief. OneWest became aware of the suit on February 23 and removed the action to the district court on March 23. By that time the redemption period had expired. The district court granted a motion for summary judgment as to all counts in the complaint on December 15.

**II.**

We review a district court's order granting summary judgment *de novo*. *Nolfi v. Ohio Ky. Oil Corp.*, 675 F.3d 538, 544 (6th Cir. 2012). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The non-moving party may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts

showing that there is a genuine issue for trial." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008).

**III.**

The district court held that El-Seblani had no "standing" to challenge the foreclosure because his "right, title and interest" in his home was "extinguished" after the expiration of the redemption period and he did not present sufficient reasons for an "equitable extension" of the redemption period. While we agree with the reasoning leading up to that holding, we would not characterize it as a holding on "standing" grounds. "[A] plaintiff must have standing under both Article III and state law in order to maintain a cause of action" when invoking diversity jurisdiction in federal court. *Morell v. Star Taxi*, 343 F. App'x 54, 57 (6th Cir. 2009). There is no serious dispute that El-Seblani has Article III standing to contest the foreclosure sale, *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (standing is established when there is a "concrete," "particularized," and "actual" injury that "is fairly traceable to the challenged action of" the defendants and capable of being "redressed by a favorable decision"), and the district court's "standing" argument was based entirely on state law. A litigant has standing under Michigan law "whenever there is a legal cause of action," including instances when a plaintiff can meet the standards for seeking a declaratory judgment. *Lansing Schs. Educ. Ass'n v. Lansing Bd. of Educ.*, 792 N.W.2d 686, 699 (Mich. 2010).

El-Seblani met Michigan's basic standing requirement. Michigan courts have long held that a mortgagor may challenge the validity of a statutory foreclosure either through "summary proceedings" in the Michigan courts pursuant to Mich. Comp. Laws § 600.5714, or by filing a

separate lawsuit, as El-Seblani did here. *See Mfrs. Hanover Mortg. Corp. v. Snell*, 370 N.W.2d 401, 404 (Mich. 1985) ("The [Michigan] Supreme Court has long held that the mortgagor may hold over after foreclosure by advertisement and test the validity of the sale in the summary proceeding."); *Reid v. Nusholtz*, 249 N.W. 831, 832 (Mich. 1933) (acknowledging that after foreclosure, the homeowner "could file a bill and have the sale set aside, or, which was equivalent thereto, hold over after redemption had expired and test the validity of the sale in the summary proceedings"). He therefore has a "cause of action" under state law.

The confusion over "standing" arises because under Michigan's foreclosure statute, "all the right, title and interest which the mortgagor had at the time of the execution of the mortgage" vests in the entity that purchased the foreclosed property in the sheriff's sale after the expiration of the redemption period. Mich. Comp. Laws § 600.3236; *see also Piotrowski v. State Land Office Bd.*, 4 N.W.2d 514, 517 (Mich. 1942) ("Plaintiffs did not avail themselves of their right of redemption in the foreclosure proceedings and at the expiration of such right . . . all plaintiffs' rights in and to the property were extinguished."). A strict reading of the statute suggests that once the redemption period expires, the homeowner has no legal interest in the property that litigation might vindicate. *Senters v. Ottawa Sav. Bank, FSB*, 503 N.W. 2d 639, 643 (Mich. 1993) (arguing that Michigan's redemption statute "leav[es] no room for equitable considerations absent fraud, accident, or mistake"). Since a typical lawsuit cannot be completed before the expiration of the redemption period, Michigan courts allow "an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice" in order to keep a plaintiff's suit viable, provided he makes "a clear showing of fraud, or irregularity"

by the defendant. *Schulthies v. Barron*, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969); *see also Freeman v. Wozniak*, 617 N.W.2d 46, 49 (Mich. Ct. App. 2000) ("[I]n the absence of fraud, accident or mistake, the possibility of injustice is not enough to tamper with the strict statutory requirements.").

The standards for obtaining such an extension are stringent. "[S]tatutory foreclosures will only be set aside if 'very good reasons' exist for doing so." *Kubicki v. Mortgage Electronic Registration Sys.*, 807 N.W.2d 433, 434 (Mich. Ct. App. 2011) (quoting *Markoff v. Tournier*, 201 N.W. 888, 889 (Mich. 1925)); *see also Sweet Air Inv., Inc. v. Kenney*, 739 N.W.2d 656, 659 (Mich. Ct. App. 2007) ("'[I]t would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside.'") (quoting *United States v. Garno*, 974 F. Supp. 628, 633 (E.D. Mich. 1997)). The misconduct must relate to the foreclosure procedure itself. *Freeman*, 617 N.W.2d at 49 ("Plaintiff cannot argue that there was fraud, accident, or mistake because plaintiff readily conceded that the foreclosure procedure was technically proper."). Moreover, because the foreclosure statutes are intended to create finality and certainty in property rights, an action challenging foreclosure must be brought "promptly and without delay." *Richard v. Schneiderman & Sherman, PC*, 818 N.W.2d 334, 337 (Mich. Ct. App. 2011), *rev'd on other grounds*, 807 N.W.2d 325 (Mich. 2012). Since extension of the redemption period is an equitable remedy, the permissible amount of delay between a foreclosure sale and a lawsuit challenging that sale may vary. Michigan courts have previously found that suits filed before the expiration of the redemption period, like El-Seblani's, can qualify for an equitable extension if a proper showing of "fraud or irregularity" is made. *Richard*, 818 N.W.2d at 337.

The district court's conclusion that El-Seblani had no "standing" was made in reliance on an unpublished Michigan Court of Appeals decision that appeared to characterize dismissal of a lawsuit challenging foreclosure after the redemption period expired as being based on "standing." *See Overton v. Mortg. Elec. Registration Sys.*, No. 284950, 2009 WL 1507342, at *1 (Mich. Ct. App. May 28, 2009). Two other unpublished cases reached similar conclusions. *See Awad v. Gen. Motors Acceptance Corp.*, No. 302692, 2012 WL 1415166, at *4 (Mich. Ct. App. April 24, 2012) (relying on *Overton* to conclude that after expiration of redemption period, plaintiff "lost all right, title, and interest in the property and, therefore, lost her standing to sue"); *Mission of Love v. Evangelist Hutchinson Ministries*, No. 266219, 2007 WL 1094424, at *5 (Mich. Ct. App. April 12, 2007) (finding that plaintiffs "no longer had any right or interest" in a foreclosed property, and therefore no "standing" under Michigan law, after the expiration of the redemption period).

We find, in line with a recent unpublished decision by this court, that these holdings "do[] not turn on standing doctrine." *Houston v. U.S. Bank Home Mortg. Wisc. Servicing*, No. 11-2444, 2012 WL 5869918, at *4 (6th Cir. Nov. 20, 2012). It is more accurate to say that the "fraud or irregularity" claims in *Overton*, *Awad*, and *Mission of Love* lacked sufficient merit to meet the high standard imposed by Michigan law on claims to set aside a foreclosure sale. Therefore, we must determine whether El-Seblani made a sufficient showing of "fraud or irregularity" in connection with the sheriff's sale of his home to "undo the divestment of [his] property." *Houston*, 2012 WL 5869918, at *5. Because we find, for the reasons stated in Part IV, *infra*, that the legal issues El-Seblani raised in connection with this foreclosure sale lack merit, we agree that he has failed to meet

the "fraud or irregularity" standard in this case and is not entitled to a rescission of the foreclosure sale.

## IV.

### A.

The district court found that El-Seblani's claim under the Mortgage Act, which sets forth requirements for the licensing of mortgage brokers in Michigan, failed because the statute does not apply to a "depository financial institution" like OneWest or IndyMac, Mich. Comp. Laws § 445.1675(a), or to "a mortgage broker, mortgage lender, or . . . mortgage servicer that is a subsidiary or affiliate of a holding company of a depository financial institution" like IMS, *id.* § 445.1675(m). We agree. The Mortgage Act defines a "depository financial institution" as "a state or nationally chartered bank, a state or federally chartered . . . savings bank . . . ." *Id.* § 445.1651a(f). This definition encompasses OneWest and IndyMac, both of which are federally chartered savings banks. IMS is also exempt because it is a subsidiary of a federally chartered savings bank. *See Tryc v. Mich. Veterans' Facility*, 545 N.W.2d 642, 646 (Mich. 1996) ("If the language of a statute is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction is not permitted."). Summary judgment on this claim was proper.

### B.

El-Seblani's various common-law arguments for attacking OneWest's and IMS's decision to pursue foreclosure instead of mortgage modification all lack merit. We begin with the breach of contract claim. The July 14, 2010, letter IMS sent to El-Seblani instructed him to submit a signed

mortgage modification agreement along and an initial payment to OneWest by July 28, 2010, in order to accept the proposed mortgage modification. There is no disagreement in the record that El-Seblani failed to provide OneWest with both the payment and the signed agreement until several weeks after the deadline passed. Unless "acceptance is unambiguous and in strict conformance with the offer, no contract is formed." *Pakideh v. Franklin Comm. Mortg. Grp., Inc.*, 540 N.W.2d 777, 780 (Mich. Ct. App. 1995); *see also Harper Bldg. Co. v. Kaplan*, 52 N.W.2d 536, 538 (Mich. 1952). El-Seblani's counsel argued before the district court that El-Seblani "represent[ed]" to her that he sent back the check and the form together, but there is no record evidence to support this story. Since there is no genuine dispute in the record that El-Seblani failed to follow the offer's instructions for acceptance, OneWest and IMS did not breach a contract by proceeding with foreclosure.

El-Seblani's promissory estoppel claim is similarly flawed. Such claims require "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, (4) in circumstances such that the promise must be enforced if injustice is to be avoided." *McMath v. Ford Motor Co.*, 259 N.W.2d 140, 142 (Mich. Ct. App. 1977). The July 14 letter to El-Seblani only promised mortgage modification if he complied with the letter's conditions. Under Michigan law, one "cannot construct a detrimental reliance or estoppel theory on a conditional promise, especially when the condition did not take place." *Bivans Corp. v. Comm. Nat'l Bank of Pontiac*, 166 N.W.2d 270, 273 (Mich. Ct. App. 1968). Since El-Seblani did not fulfill all of the prerequisites upon which OneWest's promise of mortgage modification depended, he could not have reasonably relied upon it. *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 552 (Mich. Ct. App.

1999) ("We are to exercise caution in evaluating an estoppel claim and should apply the doctrine only where the facts are unquestionable and the wrong to be prevented undoubted.").

El-Seblani's "misrepresentation" claim is also unavailing. While the complaint is vague as to the legal theory El-Seblani is invoking, the cases cited in his brief on appeal suggest that he is making an "innocent misrepresentation" claim. *See M&D, Inc. v. W.B. McConkey*, 585 N.W.2d 33, 37 (Mich. Ct. App. 1998) (noting that an "innocent misrepresentation" claim requires a "show[ing] that an unintendedly false representation was made in connection with the making of a contract and that the injury suffered as a consequence of the misrepresentation inure[d] to the benefit of the party making the misrepresentation"). The district court correctly found that IMS promised modification under conditions that El-Seblani did not meet, and El-Seblani could not point to a "false representation" made in connection with the offer. Accordingly, the district court was correct to grant summary judgment on the "misrepresentation" claim.

## C.

Next, El-Seblani claims that OneWest and IMS violated Mich. Comp. Laws § 600.3205a (2010),[2] which requires a foreclosing party to provide mortgagors with a notice of their default and their right to discuss loan modification with the lender. The statute directs the foreclosing party to "serve" the mortgagor "by mailing the notice by regular first-class mail and by certified mail, return receipt requested, with delivery restricted to the borrower, both sent to the borrower's last known address." Mich. Comp. Laws § 600.3205a(3) (2010). There are detailed requirements regarding

---

[2]Michigan's legislature amended this statute in 2011, after El-Seblani's foreclosure took place.

the information the notice letters must contain. *Id.* § 600.3205a(1)–(2). In addition, within a week of mailing the notice, the foreclosing party must publish a notice with similar information in a local periodical. *Id.* § 600.3205a(4). A foreclosure sale is voidable under Michigan law if notice is defective, *Jackson Inv. Corp. v. Pittsfield Prods., Inc.*, 413 N.W.2d 99, 101 (Mich. Ct. App. 1987), provided the plaintiff can show he was prejudiced by the lack of proper notice, *Sweet Air Inv.*, 739 N.W.2d at 662.

We agree with the district court's conclusion that OneWest and IMS complied fully with section 600.3205a. The letters sent to El-Seblani and the notice posted in the *Detroit Legal News* precisely track the detailed content requirements of the statute. The affidavit of compliance signed by OneWest's attorney confirms that all necessary steps for providing El-Seblani notice of his right to discuss a mortgage modification were followed. Furthermore, even if El-Seblani's unsupported assertions about the deficiency of notice were credited, he cannot claim he was sufficiently prejudiced by that failure to justify relief. Accordingly, summary judgment was proper.

**D.**

We conclude by considering El-Seblani's claim for "exemplary damages." "Exemplary damages" are defined under Michigan law as compensatory damages "recoverable for injury to feelings and for the sense of indignity and humiliation resulting from injury maliciously and wantonly inflicted." *Ray v. City of Detroit*, 242 N.W.2d 494, 495 (Mich. Ct. App. 1976). They "do[] not constitute a separate claim" under Michigan law. *Fonstad v. Teal*, No. 254051, 2005 WL 1705514, at *5 (Mich. Ct. App. July 21, 2005). Because the record presents no basis for imposing such damages, the district court correctly granted summary judgment on this count of the complaint.

**V.**

For these reasons, we affirm the judgment of the district court.