NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0209n.06

Case No. 23-1480

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| COVINGTON SPECIALTY INSURANCE COMPANY, | ) ) ) | **FILED**<br>May 08, 2024<br>KELLY L. STEPHENS, Clerk |
| Plaintiff - Appellee, | ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| SWEET SOUL, INC., et al., | ) ) | |
| Defendant - Appellee, | ) ) | O P I N I O N |
| MICKEY ANDERSON, Personal Representative of the Estate of Ronald Cameron Anderson, deceased, | ) ) ) ) ) | |
| Defendant - Appellant. | ) ) | |

Before: MOORE, NALBANDIAN, and BLOOMEKATZ, Circuit Judges.

**NALBANDIAN, Circuit Judge.** Covington Insurance brought this suit for a declaration that it had no duty to defend or indemnify its insured, Sweet Soul Bistro, against a state-court suit brought by the estate of a victim shot outside the restaurant. Covington joined the Estate as a defendant under Federal Rule of Civil Procedure 19.

The district court granted Covington's motion for judgment on the pleadings, finding that an assault and battery exclusion in Sweet Soul's policy barred coverage. Only the Estate, and not Sweet Soul, appealed the district court's judgment on both the duty to defend and the duty to indemnify.

But Covington lacked standing to pursue the declaration on the duty to defend against the Estate, so to the extent that the district court's declaration applies to the Estate on that claim, we VACATE the order and REMAND for the district court to dismiss that claim against the Estate. Covington, however, had standing on its duty to indemnify claim against the Estate. And finding that the assault and battery exclusion bars coverage, we AFFIRM that portion of the district court's order.[1]

## I.

In June 2019, Ronald Anderson was shot and killed outside Sweet Soul Bistro in Detroit, Michigan—allegedly by a Sweet Soul patron. Anderson's estate later sued Sweet Soul in Michigan state court for damages related to Anderson's death under Michigan's Wrongful Death Act.

For the relevant period, Sweet Soul held a commercial general liability (CGL) insurance policy with the Covington Specialty Insurance Company. The policy generally covered bodily-injury damages that Sweet Soul became legally obligated to pay. But the policy also contained an assault and battery exclusion disclaiming any duty by Covington to defend or indemnify Sweet Soul in any claim or suit to recover damages from an "actual or alleged 'assault' and/or 'battery.'" R.1-2, Covington Policy, PageID 65. This exclusion defined "Battery" as "harmful or offensive contact between or among two or more persons." *Id.* at PageID 66. The exclusion further specified that "'Battery' includes harm arising out of the . . . use of firearms." *Id.*

---

[1] The order, of course, remains final as to the defendants who did not appeal. *See, e.g.*, *1000 Friends of Wis. Inc. v. United States Dep't of Transp.*, 860 F.3d 480, 483 (7th Cir. 2017) (citing *Bowles v. Russell*, 551 U.S. 205, 214 (2007)) ("A court of appeals cannot modify a judgment to make it more favorable to a party that did not file a notice of appeal" because a "timely appeal in civil litigation is a jurisdictional requirement.").

**II.**

In July 2022, Covington brought suit in the Eastern District of Michigan, seeking a declaratory judgment that, given the Assault and Battery exclusion, it had no duty to defend or indemnify Sweet Soul in the state-court suit. Covington's complaint also joined Anderson's estate as a necessary party under Federal Rule of Civil Procedure 19, "so that the Estate may be bound by the judgment entered." R.1, Covington Compl. at 4, PageID 4.

Covington moved for judgment on the pleadings based on the Assault and Battery exclusion. Both Sweet Soul and the Estate opposed this motion.

The district court granted Covington's motion, concluding that the policy's Assault and Battery exclusion precluded coverage for Sweet Soul of the Estate's suit. The court reasoned that the Estate's state-court suit was "clearly a suit to recover damages for bodily injury arising from a battery—i.e., the harmful contact between Anderson and the shooter arising from the use of a firearm." R.46, Op. & Order at 6, PageID 421. So the court held that Covington had no duty to defend Sweet Soul in that suit, since the suit did not "arguably come within the policy coverage." *Id.* at 6, 12-13, PageID 421, 427-28. And because an insurer who has no duty to defend necessarily has no duty to indemnify under Michigan law,[2] the court rejected the latter claim as well.

The Estate timely appealed—but Sweet Soul did not.

---

[2] Under Michigan law, the duty to defend and the duty to indemnify are "two separate, but related, duties of the insurer." *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 480 (Mich. 1996). And "the duty to defend is broader than the duty to indemnify," because it kicks in whenever "the allegations of a third party against the policyholder even arguably come within the policy coverage." *Id.* at 481. So when there is no duty to defend, there is no duty to indemnify. *See id.*

**III.**

For a start, Covington contends that the Estate lacks standing to appeal. Since standing is a jurisdictional matter, we address it as a threshold question that we have an independent duty to address. *See Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 405 (6th Cir. 2019). And although Covington raises only the Estate's standing to appeal, it turns out that the standing issues are more complicated than that—implicating Covington's ability to join the Estate in the first place.

Article III of the Constitution limits federal courts to deciding cases and controversies. U.S. Const., Art. III, § 2. And the doctrine of standing "is an essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, a "plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *FEC v. Cruz*, 596 U.S. 289, 296 (2022) (citing *Lujan*, 504 U.S. at 560-61). An injury in fact must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted).

Although Covington brings up only the Estate's standing to appeal, any standing issues go back further. Covington claims that the Estate lacks standing to appeal because "any ruling on Covington's duty to defend Sweet Soul does not impact the Estate." Appellee Br. at 17. But if Covington is right, it lacked a "substantial controversy" with the Estate "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" when it began the lawsuit. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks and citation omitted). So we ask whether Covington could join the Estate as a defendant in the first

place. In other words, could Covington show an injury in fact, traceable to the Estate, that is likely to be redressed by the requested relief? *See Lujan*, 504 U.S. at 560-61.

So what injuries could Covington rely on to establish standing to sue the Estate?[3] By seeking a declaratory judgment, Covington is trying to avoid performing an insurer's twin duties— the duty to defend and the duty to indemnify—in the state-court suit. If applicable, the duty to defend would require Covington "to pay for [Sweet Soul]'s legal counsel and litigation costs," while the duty to indemnify would require Covington to pay the Estate "any damages awarded against [Sweet Soul] for the covered loss." *See Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs*, 53 F.4th 1014, 1021 (6th Cir. 2022).

In *Safety Specialty*, we resolved standing issues in a very similar case. There, the insured (Genesee County, Michigan) was named in two class actions accusing a multitude of Michigan counties of retaining surplus proceeds from tax-foreclosure sales of private property. *Id.* at 1018-19. The insurers (collectively Safety Specialty) brought a federal suit against both the insured, Genesee County, and the class representatives, seeking a declaration that it owed no duty to defend or indemnify from the class actions. *Id.* The district court had held that the insurer had no duty to defend or indemnify the County from the class actions but dismissed the case against the class representatives for lack of standing. *Id.* at 1018.

---

[3] A person joined to a suit under Rule 19 is a full party to the case, including for purposes of subject-matter jurisdiction and being bound by the judgment. Fed. R. Civ. P. 19(a)(1) (joinder of a person as a party is allowed only when the person joined "will not deprive the court of subject-matter jurisdiction"); 20 Charles Alan Wright & Mary Kay Kane, *Fed. Prac. & Proc. Deskbook* § 76 (2d ed. 2023) ("If the absentee needed for just adjudication is a defendant, the plaintiff may join the absentee as plaintiff would any other defendant."). *See also* Fed. R. Civ. P. 19 advisory committee's note to 1966 amendment (a district court "can make a legally binding adjudication only between the parties actually joined in the action").

On appeal, we first affirmed on the standing finding related to the duty to defend against the class representatives because that duty "does not involve them"—after all, an insurer's duty to defend is a "right affecting only the obligations of the insurer vis-a-vis the insured." *Id.* at 1021 (quoting *Allstate Ins. Co. v. Wayne County*, 760 F.2d 689, 695 (6th Cir. 1985)).

We also concluded that the insurer could not litigate the duty to indemnify against the class representatives. *Id.* at 1023. But that argument was more complicated. We recognized that the Supreme Court had allowed an insurer to seek a declaratory judgment in federal court against an injured party that has sued its insured in a state court. *Id.* at 1022 (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273-74 (1941)). We noted that the Supreme Court found an insurer could show a constitutionally sufficient controversy with the injured party based on several key factors: (1) state law allowed the injured party to proceed against the insurer to satisfy *any* final judgment left unpaid by the insured, (2) "the injured party could prevent the policy from lapsing by performing its notice conditions," and (3) state and federal courts might reach opposite interpretations of the policy. *Id.* (citing *Md. Cas.*, 312 U.S. at 273-74). But the *Safety Specialty* court distinguished *Maryland Casualty* because, in *Safety Specialty*, the class representatives were allegedly injured by other counties. *Id.* at 1023. Since Genesee County was not the "alleged tortfeasor," there was no "real dispute" between it and the class representatives.[4] *Id.*

We concluded, given the circumstances of the underlying class actions, that the controversy on the duty to indemnify as it involved Genesee County was not ripe for adjudication. *Id.* at 1023-

---

[4] In the underlying class actions in *Safety Specialty*, neither one of the class representatives that the insurance company sued were residents of Genesee County. 53 F.4th at 1018. Instead, there were allegedly putative class members who were residents of Genesee County. *Id.* at 1023. But the federal declaratory judgment lawsuit involved only the insurance companies, the two non-resident class representatives, and the insured (Genesee County). *Id.* at 1018.

24. We noted that the most immediate "harm" that would come to the insurance company involved the duty to defend in the class actions, not the duty to indemnify. *Id.* at 1023. And the latter harm was too remote given the lack of progress of the class actions at least as far as they implicated Genesee County in particular. *Id.* at 1023-24. We did conclude that the record was sufficiently developed to adjudicate the duty to indemnify issue and that the class action representatives had weighed in on those coverage issues. *Id.* at 1024. But ultimately, we determined that the federal suit was not ripe for adjudication on the duty to indemnify as between Safety Specialty and the class representatives. *Id.*

Returning to our case, we turn first to the duty to defend. We see no reason to depart from the logic of *Safety Specialty*, which involved both a similar scenario and Michigan law. Indeed, Covington argues that the Estate lacks standing to litigate this appeal. *See* Appellee Br. at 17 (citing *Safety Specialty*, 53 F.4th at 1014, 1022). But Covington's logic applies to the suit against the Estate in the first instance, as in *Safety Specialty*. After all, if Covington has a duty, it is the duty to defend Sweet Soul *against* the Estate—not the other way around. So, as in *Safety Specialty*, Covington's alleged duty to defend Sweet Soul does not create an injury in fact traceable to the Estate.

But the duty to indemnify is a closer question. Unlike the insurers in *Safety Specialty*, Covington may have to pay the Estate's damages if the latter prevails in its state-court suit against Sweet Soul—for here, Sweet Soul *is* the "alleged tortfeasor" in the state-court suit. *See Safety Specialty*, 53 F.4th at 1023. Covington also satisfies the other factors emphasized by the *Maryland Casualty* Court: first, Michigan law allows the Estate to proceed against Covington to satisfy any unpaid judgment against Sweet Soul, Mich. Comp. Laws § 500.3006; second, there is no sign that the policy will lapse for lack of notice; and third, the district court and a Michigan court, in a

supplemental proceeding, could reach opposite interpretations of Sweet Soul's policy with Covington. *See Md. Cas.*, 312 U.S. at 273-74.

On the other hand, like in *Safety Specialty*, there are still contingencies that must occur before Covington could be liable to the Estate. *See* 53 F.4th at 1023-24. Namely, there must be a judgment against Sweet Soul in state court (which may or may not exist and be final at this point) and Sweet Soul must be unwilling to satisfy that judgment. But unlike in *Safety Specialty*, as we've noted, the insured may be directly responsible to the Estate as the relevant tortfeasor. And given that the Court's decision in *Maryland Casualty* remains good law[5] and is almost directly on point, on balance, we conclude that Covington's claim on the duty to indemnify is ripe for adjudication.

So we find that Covington can show an injury in fact traceable to the Estate: the possibility it may have to indemnify Sweet Soul in the state-court suit brought by the Estate.

**IV.**

Having assured ourselves of our jurisdiction on part of this case, we turn to whether the district court properly granted Covington's motion for judgment on the pleadings under Rule 12(c), which we review de novo. *See Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008).

---

[5] *See, e.g.*, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 132 n.11 (2007) (rejecting a Federal Circuit test limiting declaratory judgment patent actions because it conflicted with *Maryland Casualty*, among other Supreme Court decisions); *Morell v. Star Taxi*, 343 F. App'x 54, 58 (6th Cir. 2009) (applying *Maryland Casualty* to find standing in declaratory judgment action); *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1244-47 (10th Cir. 2008) (applying *Maryland Casualty* to find Article III jurisdiction over trademark dispute).

The parties agree that Michigan law governs. Appellant Br. at 13; Appellee Br. at 14; *see also Fox v. Amazon.com, Inc.*, 930 F.3d 415, 422 (6th Cir. 2019). On appeal, we consider only Covington's duty to indemnify related to the state-court suit.[6] Under Michigan law, an insurer's duty to indemnify "arises only with respect to insurance afforded by the policy." *City of Warren v. Int'l Ins. Co. of Hannover, Ltd.*, 524 F. App'x 254, 258 (6th Cir. 2013) (citing *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 481 (Mich. 1996)).

So we start with the exclusion's text, as Michigan courts would. *City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 702 N.W.2d 106, 122 (Mich. 2005) ("[A] court must always begin with the actual language used by the parties in the insurance policy itself."). Michigan courts "construe an insurance policy in the same manner as any other species of contract, giving its terms their ordinary and plain meaning." *DeFrain v. State Farm Mut. Auto. Ins. Co.*, 817 N.W.2d 504, 509 (Mich. 2012) (cleaned up). "Exclusionary clauses in insurance policies are strictly construed in favor of the insured." *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 434 (Mich. 1992).

The exclusion disclaims any duty by Covington to defend or indemnify Sweet Soul in any claim or suit for damages arising from an "actual or alleged 'assault' and/or 'battery.'" R.1-2, Covington Policy, PageID 65. Further on, the exclusion's definition provides that:

> "Battery" is defined as the harmful or offensive contact between or among two or more persons and includes, but is not limited to, contact of a physical or sexual nature. "Battery" includes harm arising out of the distribution, demonstration,

---

[6] We recognize that the duty to defend and the duty to indemnify are closely linked. *See supra* n.2. But "standing is determined on a claim-by-claim basis." *Weiser v. Benson*, 48 F.4th 617, 624 n.5 (6th Cir. 2022). Since Covington had standing to sue the Estate on only the duty to indemnify, we review only that part of the opinion. To be sure, as we outlined above, the district court examined only the duty to defend here because that resolution necessarily resolved the duty to indemnify. But because the duty to indemnify and the duty to defend involve the same basic legal analysis with the duty to indemnify being the narrower of the two, we can decide that issue.

accidental discharge, gunsmithing, ownership, maintenance or use of firearms or "weapons".

*Id.*, PageID 66.

Does the state-court suit fit within these definitions? Yes. For one, the suit is for damages from an "actual or alleged" battery: the shooting of Ronald Anderson. *See* R.1-1, Estate's Compl. at 2, PageID 22 ("The present action arises from a foreseeable and preventable shooting."). And Anderson's fatal shooting is undoubtedly a "harmful or offensive contact" resulting from the "use of firearms."

The Estate disputes this plain meaning, claiming that "there is possible coverage for a business customer's intentional use of a single firearm." Appellant Br. at 15. But this argument rests on the premise that the second sentence of the "Battery" definition limits the first's import. *Id.* at 16. The Estate's theory is that the word "includes" in the second sentence limits the meaning of "Battery" because, unlike in the first sentence, it is not followed by the phrase "but is not limited to." *Id.* The Estate provides no support for this limiting interpretation beyond a quote from the Michigan Supreme Court that "[t]he word 'include' can be used as a term of enlargement and of limitation." *Id.* (quoting *Belanger v. Warren Consol. Sch. Dist.*, 443 N.W.2d 372, 377 n.25 (Mich. 1989)). But "most courts read the word 'include' to introduce a nonexhaustive list." *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022). And "the commonness" of "belt-and-suspenders phrases," like "including but not limited to," does "not lessen the exemplariness of *include*." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 132-33 (2012). So a more natural reading would treat the first sentence as a general definition and the second as a non-exhaustive list of examples.

In any event, even if the second sentence limits the definition of "Battery," the Estate's reading falls flat. The Estate invokes the *expressio unius* canon,[7] claiming that the second sentence excludes the "intentional 'discharge' of firearms" because "of the listing of 'accidental discharge' separate from 'use of firearms.'" Appellant Br. at 17. But this canon "has force only when the items expressed are members of an associated group or series, justifying the inference that *items not mentioned* were excluded by deliberate choice." *Mich. Ambulatory Surgical Ctr. v. Farm Bureau Gen. Ins. Co. of Mich.*, 965 N.W.2d 650, 655 (Mich. Ct. App. 2020) (emphasis added) (citation omitted). And at least one item mentioned in the sentence— "use of firearms"—does encompass intentional shootings like the one here. So the canon does not limit the policy's definition of "Battery" to accidental shootings.

The Estate also fixates on the use of the plural "firearms" in the second sentence, claiming that it limits the exclusion "to incidents involving more than one firearm." Appellant Br. at 18. But Michigan embraces the number canon. Mich. Comp. Laws § 8.3b ("Every word importing the singular number only may extend to and embrace the plural number, and every word importing the plural number may be applied and limited to the singular number."); *see also* Mich. Comp. Laws § 750.10 (adopting the same canon in the Michigan Penal Code). So does common usage: any reasonable person understands that a "No Firearms Allowed" sign prevents bringing even a single firearm into a building. Accordingly, the exclusion applies whenever shots are fired, no matter if they come from one or multiple guns.

---

[7] "The expression of one thing implies the exclusion of others." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012).

* * *

So the district court correctly concluded that "that the assault-and-battery exclusion clearly and unambiguously precludes coverage" in the state-court suit.  R.46, Op. & Order at 2, PageID 417.

## V.

Because the district court correctly found that the Assault and Battery exclusion barred coverage, we AFFIRM the district court's holding that Covington had no duty to indemnify related to the Estate's state-court suit.  But since Covington lacked standing to pursue a declaration on the duty to defend against the Estate, we VACATE that part of the order and REMAND for the district court to dismiss that claim against the Estate.