COMMERCIAL UNION ASSURANCE COMPANIES, Appellant/Movant,

v.

Girn HOWARD, Appellee/Respondent.

Supreme Court of Kentucky.

Aug. 31, 1982.

A. Courtney Guild, Jr., Russell H. Saunders, Handmaker, Weber, Meyer & Rose, Louisville, for appellant/movant.

John C. Collins, Turner & Collins, Salyersville, for appellee/respondent.

O'HARA, Justice.

This appeal arises from entry of a summary judgment in the Magoffin Circuit Court by which it was held that Mr. Howard's (plaintiff below) no-fault insurance policy with Commercial Union Assurance Companies (defendant below) provided coverage under the stipulated facts of the case at bar. The Court of Appeals affirmed the decision of the trial court. We granted discretionary review. The narrow legal question simply stated is: Does a standard insurance policy issued pursuant to the requirements of the Kentucky Motor Vehicle Reparations Act afford coverage to an injured policyholder who is injured while attempting to repair his own vehicle while parked in his own driveway? The answer is "No."

█ We, therefore, reverse the holdings of the Magoffin Circuit Court and the Court of Appeals and hold that KRS Chapter 304.39 does not allow no-fault benefits

to one privately engaged in *normal* vehicular repair work.

The facts of this case are simple and have been stipulated to by both parties. Mr. Howard, respondent, is in the business of operating a coal truck; he is not in the business of repairing vehicles. Appellee received substantial injuries while underneath his own truck effecting repairs to the suspension system thereof, and was doing so on his own property, where he had brought the truck for the purpose of making the repairs. At the time of the injury, the truck was covered by an insurance policy issued by the appellant, Commercial Union Assurance Companies. The policy was a standard, basic automobile liability insurance policy issued in accordance with and pursuant to KRS Chapter 304.39.

In reaching our conclusion, it is necessary to look to the definitions found in KRS 304.39–020. Subsection (2) provides that:

" 'Basic reparation benefits' mean benefits providing reimbursement for net loss suffered through injury arising out of the operation, maintenance or use of a motor vehicle. . . ."

Subsection (6) provides that:

" 'Use of a motor vehicle' means any utilization of the motor vehicle as a vehicle including occupying, entering into and alighting from it. It does not include

(i) conduct within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles unless the conduct occurs off the business premises, or

(ii) conduct in the course of loading and unloading the vehicle unless the conduct occurs while occupying, entering into, or alighting from it."

Subsection (16) provides that:

" 'Maintaining a motor vehicle' means having legal custody, possession or responsibility for a motor vehicle by one other than an owner or operator."

Finally, KRS 304.39–040(2) provides in part that:

"basic reparation obligors . . . shall pay basic reparation benefits, under the terms

and conditions stated in this subtitle, for loss from injury arising out of maintenance or use of a motor vehicle...."

There is obviously no clear definition to the phrase "maintenance of a motor vehicle." The closest definition is found at KRS 304.39–020(16) which defines "maintaining a motor vehicle," and clearly does *not* include repairing or servicing the motor vehicle. The question then is: did the legislature intend a different definition for the word "maintenance" and, if so, why was it not included in the list of definitions?

The answer lies within KRS 304.39–020(6) which basically defines the "use of a motor vehicle" as "any utilization of the motor vehicle *as a vehicle*...." (Emphasis added). The statute also covers acts incidental to this utilization as including entering into and alighting from the vehicle, but specifically *excludes* conduct in the course of loading or unloading unless the conduct occurs while occupying, entering into, or alighting from it. Furthermore, this subsection additionally excludes "*conduct within the course of a business* of repairing, servicing, or otherwise maintaining motor vehicles...." (Emphasis added). The patent ambiguity arises at this point where the legislature makes an exception to this exclusion, to wit: "unless the conduct occurs off the business premises...." It would seem logical to interpret this exception as to exclude a business, whose conduct is by nature repairing, servicing or maintaining motor vehicles, from collecting under an automobile no-fault provision when coverage could have and should have been provided for under some other type of business insurance policy.

This interpretation also relates back to the exception described above. A person injured while loading or unloading a vehicle after it has been parked could conceivably be covered by both health insurance and homeowner's insurance policies. Such is the situation of the case at bar. Mr. Howard was not utilizing his truck *as a vehicle* at the time he received his injuries. It would seem that other relevant types of insurance coverage could have been available to him under the circumstances.

■ It is impractical to extend insurance coverage outside the field which it is intended to cover. Automobile insurance companies take many factors into consideration before deciding whether to write a policy and then at what cost. Basic automobile insurance policies are intended to cover "driving" the vehicle, not repairing it. This additional field of coverage should be provided for by appropriate policies intended for that particular purpose.

The lower courts were led astray by the ambiguous language of the legislature. It is within the legislative power to clearly delineate coverage provided, but the current provisions present no such clear delineation.

■ Since Mr. Howard did not meet the requirements set out under KRS Chapter 304.39 as interpreted by this Court, we hold that, as a matter of law, he was not covered under the no-fault provisions of his automobile insurance policy with Commercial Union Assurance Companies.

The cause is reversed and remanded to the Magoffin Circuit Court with instructions for that court to enter a judgment consistent with this opinion.

All concur.