STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Movant,

v.

Norman L. RAINS, Respondent.

and

Kathleen J. SMITH; Matthew E. Smith,
an infant, by his next friend, Kathleen
J. Smith; and James T. Marshall, Mov-
ants,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Respondent.

Supreme Court of Kentucky.

Aug. 7, 1986.

As Corrected Aug. 7, 1986.

Rehearing Denied Sept. 25, 1986.

Henry A. Triplett, Robert R. deGolian,
Bennett, Bowman, Triplett & Vittitow,
Louisville, for State Farm.

Terry Fox, Gilbert Hale Nutt, Louisville,
for Rains.

David A. McCullough, Louisville, for
Smith and Marshall.

VANCE, Justice.

We granted discretionary review in each
of the captioned cases and consolidated
them for argument. The question in each
case is whether there must be some causal
relationship between the maintenance or
use of a motor vehicle and an injury sus-
tained while using a motor vehicle to entitle
the injured person to basic reparation bene-
fits as a result of the injury. K.R.S. 304.-
39–020, 304.39–030, and K.R.S. 304.39–040.

Norman Rains, as he approached his
parked automobile around midnight, ob-
served two or more individuals on, or par-
tially on, the hood of his car who were
apparently engaged in a fight. He asked
them to get off of his car and was struck
by one of the participants. He then joined

in the fray, subdued his attacker, and was hit in the back of the head with a baseball bat, by a person unknown to him, as he proceeded to enter his motor vehicle. His claim for basic reparation benefits on account of his injuries was denied by his insurance carrier on the ground that his injury did not arise out of the use of a motor vehicle. The trial court granted summary judgment to the insurance carrier, and the Court of Appeals reversed. We reverse the decision of the Court of Appeals.

Charles Smith was operating his motor vehicle on a public highway, and James Marshall was a passenger in the vehicle. Orville Smith, a deranged brother of Charles Smith, fired several shots through the rear window and instantly killed Charles Smith.

The vehicle turned over and came to rest. James Marshall crawled on his hands and knees away from the vehicle. He was shot and injured by Orville Smith as he crawled away.

The claims for basic reparation benefits resulting from injuries caused by the gunshot wounds to Charles Smith and to James Marshall were denied on the ground that the injuries did not arise out of the use of a motor vehicle. The trial judge granted summary judgment to the insurance carrier. The Court of Appeals affirmed, and we affirm the decision of the Court of Appeals.

Basic reparation benefits are provided by the Motor Vehicle Reparations Act. K.R.S. 304.39–010–040. Among the purposes of the act are these:

"To provide prompt payment to victims of *motor vehicle accidents* without regard to whose negligence caused the accident ...; and

"To encourage prompt medical treatment and rehabilitation of the *motor vehicle accident victim* by providing for prompt payment of needed medical care and rehabilitation;" (Emphasis ours.)

K.R.S. 304.39–010(2) and (3).

K.R.S. 304.39–030(1) provides:

"If the accident causing injury occurs in this Commonwealth every person suffering loss from *injury arising out of maintenance or use of a motor vehicle* has a right to basic reparation benefits, unless he has rejected the limitation upon his tort rights as provided in KRS 304.-39–060(4)." (Emphasis ours.)

K.R.S. 304.39–040(2) provides:

"Basic reparation obligors and the assigned claims plan shall pay basic reparation benefits, under the terms and conditions stated in this subtitle, for loss from *injury arising out of maintenance or use of a motor vehicle.* This obligation exists without regard to immunity from liability or suit which might otherwise be applicable." (Emphasis ours.)

The plain language of the statutes provides for the payment of basic reparation benefits to the victims of *motor vehicle accidents* for injuries *arising out of the use of a motor vehicle.*

The questions in each of the captioned cases are (1) whether the injured persons were motor vehicle accident victims, and (2) whether their injuries arose out of the use of a motor vehicle.

Although the injuries to each of the persons involved were caused by intentional acts, they contend that, as to them, the injuries were accidents because they were wholly unexpected and unforeseeable. Conceding for the purposes of argument, but not deciding, that the injured persons were the victims of an accident, they fail to establish that they were victims of a *motor vehicle* accident. The accident claimed by Rains was the deliberate, but unexpected, blow from a baseball bat. The accident claimed by Smith and Marshall was the intentional shooting by a third party, albeit unexpected and unforeseen by them. In both cases the only connection between the victims and a motor vehicle was incidental. No motor vehicle accident contributed to their injuries. It follows that they were not victims of a motor vehicle accident.

It seems equally clear that the injuries did not arise out of the use of a motor vehicle. The contention is made that each of the injured persons was using a motor vehicle because the term "use" is defined in K.R.S. 304.39-020(6) as "any utilization of the motor vehicle as a vehicle, including occupying, entering into, and alighting from it." Even if it be conceded, however, that the injured were using a motor vehicle at the time they were injured, it remains their burden to demonstrate that the injuries arose out of the use of the vehicle.

They interpret the statutes involved to mean that reparation benefits are payable to one who is injured while using a motor vehicle without regard to whether the use of the motor vehicle had any causal connection with the injury.

K.R.S. 304.39-030(1) and 040(2) do not provide for the payment of benefits to persons injured while using a motor vehicle. They provide for payment of benefits, not to all persons who are injured while making use of a motor vehicle, but only to those persons injured while making use of a motor vehicle whose injuries arose out of the use of the motor vehicle.

The term "arising out of the use of" implies a causal connection. We so decided in *United States Fidelity and Guaranty Company v. Western Fire Insurance Co.,* Ky., 450 S.W.2d 491 (1970). In that case, a passenger in a motor vehicle was injured when a pistol was accidentally discharged in the car. It was stipulated that the movement or operation of the car had nothing to do with the accidental discharge of the pistol. The question presented was the proper interpretation to be placed upon an insurance policy which provided for coverage for *bodily injury arising out of the use of the automobile.*

■ We held that the injury did not arise out of the use of the vehicle because there was not a causal connection between the use of the vehicle and the injury. While it is true that this case construed the phrase "arising out of the use of an automobile" as that term was used in an insurance policy rather than a statute, we see no

reason why a different interpretation should apply here. We hold that basic reparation benefits are payable pursuant to K.R.S. 304.39-030(1) and 040(2) only when there is a causal connection between the injuries and the maintenance or use of the motor vehicle.

As to the respondent Rains, no such causal connection exists. The only contention made by Rains is that he was injured while using his automobile. The only causal connection suggested by Rains' brief is that he would not have been injured except for the fact that his vehicle was parked at the place it was and that he returned to that place to make use of his vehicle. This fails to suffice as a showing that his use of his vehicle caused his injury.

Likewise, Smith and Marshall were shot by a deranged brother of Smith, but there is nothing to suggest that the shooting was causally related to the use of the vehicle.

The decision of the Court of Appeals in State Farm Mutual Automobile Insurance Company v. Rains, NO. 86-SC-19-DG, is reversed.

The decision of the Court of Appeals in Smith and Marshall v. State Farm Mutual Automobile Insurance Company, NO. 85-SC-1013-DG, is affirmed.

STEPHENS, C.J., and WHITE, GANT, STEPHENSON, VANCE and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents as to 86-SC-19-DG and dissents in part/concurs in part as to 85-SC-1013-DG in a separate attached opinion.

LEIBSON, Justice, dissenting (as to 86-SC-19-DG) dissenting in part/concurring in part (as to 85-SC-1013-DG).

Respectfully, I dissent.

The fundamental error is that we assign meaning to the "basic reparations benefits" coverage provided by the Motor Vehicle Reparations Act (MVRA) by presupposing that it is like automobile liability insurance, instead of recognizing it for what it is. It was represented to the General Assembly

and to the public by its sponsors and promoters as a new and different type of insurance coverage, as a public protection plan for persons injured in motor vehicle accidents, not a new type of liability insurance.

The purpose of liability insurance is to indemnify the policyholder for his liability to third parties. The purpose of no-fault insurance, as represented to the General Assembly and the public, is to displace a portion of the liability insurance system with insurance that would provide prompt and efficient payment for medical expenses and loss of income on a first party basis for persons injured while using a motor vehicle. Its purposes include, in appropriate part, to "permit more liberal wage loss and medical benefits" (KRS 304.39–010(4)); "a system which can pay victims of motor vehicle accidents without the delay, expense, aggravation, inconvenience, inequities and uncertainties of the liability system" (KRS 304.39–010(5)).

Thus it makes no sense to interpret the law so as to restrict benefits for these claimants, applying liability insurance law. The key to unlock coverage should be in using a motor vehicle, not in an indefinable causal connection. Rains and Smith suffered injury and death while using a motor vehicle, just as surely as they would have done so in a head-on collision with another car.

Nevertheless, our Court chooses to utilize as its frame of reference for the key term—"arising out of the operation, maintenance or use of a motor vehicle" (KRS 304.39–020(2))—a restricted definition suitable to the reasonable expectations of a liability insurance policyholder, but unsuitable for the reasonable expectations of a no-fault insured. Whereas the term "arising out of the use of" may suitably imply a causal connection when the issue is whether the insured should be covered by his automobile liability insurance policy for a claim made against him by a third party, the no-fault insured was promised more. He has a right to believe that: (1) the source of his injury will be viewed as acci-

dental so long as it is an unintended consequence from his point of view, and (2) that the coverage provided is for a *positional risk* rather than requiring causal connection in the traditional tort sense.

Just recently in *Fryman v. Pilot Life Ins. Co.*, Ky., 704 S.W.2d 205 (1986), we abandoned an earlier, more restricted interpretation of "accident" and "accidental means" within the context of the double-indemnity provision in life insurance contracts, stating:

> "The fundamental flaw with such a rule is that it subjects contract terms to analysis under tort principles, such as fault and foreseeability." 704 S.W.2d at 206.

We held that "a death is accidental absent a showing that the death was a result of plan, design or intent on the part of the decedent." *Id.* This should be dispositive of whether the present injuries should be considered accidents—they were from the standpoint of the insureds.

Next, as to the "arising out of" terminology in the Act, in the workers' compensation law we faced the same crossroads, and took a different turn. The Workers' Compensation Act covers injury "arising out of and in the course of employment." KRS 342.620. "Injury" includes "any work related harmful change in the human organism" (*Id.*). "Work related" (or "work connected") and "arising out of and in the course of employment" as used in the Act are treated as synonymous terms. *Moore v. Square D Company*, Ky., 518 S.W.2d 781 (1974). For a long time coverage in workers' compensation cases has been provided on the basis of *positional risk*, meaning that if the work puts you in the place where you are injured, you're covered. *Standard Oil Co. v. Witt*, 283 Ky. 327, 141 S.W.2d 271 (1940).

The leading Kentucky case on this subject that involves injury from being shot, squarely in point, is *Corken v. Corken Steel Products, Inc.*, Ky., 385 S.W.2d 949 (1965). The *Corken* case bears a fact pattern with elements similar to *both* of the cases under present consideration:

"As [Corken] was in the act of getting back into his automobile, which was parked on the street near the restaurant, he was deliberately shot and killed by a stranger acting without provocation or discernible reason of any kind, evidently a madman." 385 S.W.2d at 949.

We held:

"Corken's employment was the reason for his presence at what turned out to be a place of danger, and except for his presence there he would not have been killed. Hence it is our opinion that his death arose out of the employment." 385 S.W.2d at 950.

In *Corken*, we rejected utilizing the concepts of "proximate cause, or foreseeability" as tort law concepts not applicable to workers' compensation cases, quoting Larson, Workmen's Compensation. Larson states at § 6.60, p. 3–10:

"[W]hat relevance has foreseeability if one is not interested in the culpability of the actor's conduct? There is nothing in the theory of compensation liability that cares whether the employer foresaw particular kinds of harm or not. The only criterion is connection in fact with the employment, whether it is foreseeable in advance, or apparent only in retrospect."

We adopted Larson's rule of *positional risk*, stating:

"We accept the view that causal connection is sufficient if the exposure results from the employment." 385 S.W.2d at 950.

Another recent case, also squarely in point, is *Tommy Thompson Produce Co. v. Coulter*, Ky.App., 678 S.W.2d 794 (1984) wherein the Court of Appeals applied the "positional risk" theory to provide workers' compensation coverage to an employee shot and killed in a bizarre incident that started on the street and concluded on the employer's wholesale produce business premises, a death that was work related *only* in the place where it occurred, and for no other reason. The case cannot be distinguished factually from the present *Smith* case.

Like workers' compensation law, coverage for basic reparations benefits should be broadly interpreted in favor of its intended beneficiaries. The cardinal cannon of insurance policy construction should apply: ambiguities must be resolved in favor of the insured. Keeton, *Insurance Law* (Basic Text), § 6.3, at 350–57 (1971). The trend of modern cases is to obliterate the distinction between accidental means and accidental results. Keeton, *supra: Fryman v. Pilot Insurance Co., supra.*

With this frame of reference, we examine the present statute. Nowhere does it expressly require any causal connection between the use of the car and the injury. Nowhere does it speak in terms of the method of injury, or limit injuries covered to those foreseeable from normal use of an automobile, or define accident from the viewpoint of the actor rather than from the viewpoint of the injured party. Although the Act does not do so, we do so. The "causal connection" frame of reference as used in the majority opinion has no definable limitations. Our court will be reduced to deciding "causal connection" case-by-case (on a "we'll know it when we see it" basis). We have created the very uncertainty that no-fault benefits were presumably designed to prevent.

In the definition section, KRS 304.39–020(2), the act specifies that "basic reparation benefits" are to be provided for any "injury arising out of the operation, maintenance or use of a motor vehicle: . . . ." In KRS 304.39–020(6), the Act defines "Use of a motor vehicle" as meaning "any utilization of the motor vehicle as a vehicle including occupying, entering into and alighting from it." This is a broad definition, and claimants Rains and Smith fit within its parameters.

Recently, in *Goodin v. Overnight Transp. Co.*, Ky., 701 S.W.2d 131 (1985), a similar claim for restrictive interpretation of the MVRA was rejected. The claimant was injured while unloading a tractor-trailer when he stepped through the hole in the trailer bed. The insurer argued that the accident was not caused by a use of the

vehicle in the *normal* sense. We extended coverage, looking to the broad definition of "use of a vehicle" as provided by the Act, "any utilization of the motor vehicle as a vehicle including occupying, entering into and alighting from it." KRS 304.39–020(6).. We refused to read into the legislation restrictions which were not expressly provided by the terms of the Act.

In *Bailey v. Reeves*, Ky., 662 S.W.2d 832 (1984), we followed a similar course. We should do so now, consistent with our previous decisions in *Goodin* and *Bailey*. What is *not* included in the term "use of a motor vehicle" is expressly specified in KRS 304.39–020(6). We should add nothing to it. There is no reason for us to give the term an expanded definition in this case.

From the standpoint of the person suffering the injury, there is no difference whether the person causing the injury did so intentionally or inadvertently; nor is there any difference based on the nature of the injury producing agent. These distinctions are artificial and court created, and they run contrary to the medical payments coverage and disability insurance which is expressly and directly provided by the Act to persons injured while using a motor vehicle. Subject to the limitations expressly provided in the Act, coverage for basic reparations benefits is nothing more than one form of travel insurance, travel insurance substituted for the right to sue a tortfeasor for the same damages. It is, just as is workers' compensation, nothing more than a limited coverage for a positional risk. Injury occurring during the use of the vehicle should be covered.

Thus construed, the respondent, Rains, was entitled to coverage for his injuries, since they occurred while he was "entering into" his automobile, which is expressly covered by the Act. KRS 304.39–020(6).

In the Smith case, Smith's heirs are entitled to basic reparation benefits. However, Marshall was shot after he had crawled from the wreckage and was no longer in a covered automobile. Therefore, I would reverse the Court of Appeals as to the Smith claim, but affirm as to the Marshall claim.