RENDERED: JULY 11, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0426-MR

KENTUCKY ASSOCIATION OF
COUNTIES ALL LINES FUND                                        APPELLANT


|  | APPEAL FROM PULASKI CIRCUIT COURT |
|---|---|
| v. | HONORABLE EDDY MONTGOMERY, JUDGE |
|  | ACTION NO. 21-CI-00695 |


CITY OF SOMERSET, KENTUCKY;
BENGIE HOWARD, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY
AS TRAINING DIRECTOR FOR THE
SOMERSET FIRE DEPARTMENT;
BRYAN WEST, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY
AS A LIEUTENANT OF THE
SOMERSET FIRE DEPARTMENT;
DAVID VOLZ, INDIVIDUALLY AND
IN HIS OFFICIAL CAPACITY AS
BATTALION CHIEF OF THE
SOMERSET FIRE DEPARTMENT;
SAMUEL HUDSON, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY
AS A CAPTAIN WITH THE
SOMERSET FIRE DEPARTMENT;
SOMERSET FIRE DEPARTMENT;
STEPHEN TYLER JASPER,
INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY AS CHIEF OF
THE SOMERSET FIRE

DEPARTMENT; AND TRAVIS J.
WESLEY, INDIVIDUALLY AND IN
HIS OFFICIAL CAPACITY AS A
FIREFIGHTER WITH THE
SOMERSET FIRE DEPARTMENT                                        APPELLEES

AND


NO. 2024-CA-0430-MR


CITY OF SOMERSET, KENTUCKY;
BENGIE HOWARD, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY
AS TRAINING DIRECTOR FOR THE
SOMERSET FIRE DEPARTMENT;
BRYAN WEST, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY
AS A LIEUTENANT OF THE
SOMERSET FIRE DEPARTMENT;
DAVID VOLZ, INDIVIDUALLY AND
IN HIS OFFICIAL CAPACITY AS
BATTALION CHIEF OF THE
SOMERSET FIRE DEPARTMENT;
SAMUEL HUDSON, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY
AS A CAPTAIN WITH THE
SOMERSET FIRE DEPARTMENT;
SOMERSET FIRE DEPARTMENT;
STEPHEN TYLER JASPER,
INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY AS CHIEF OF
THE SOMERSET FIRE
DEPARTMENT; AND TRAVIS J.
WESLEY, INDIVIDUALLY AND IN
HIS OFFICIAL CAPACITY AS A
FIREFIGHTER WITH THE
SOMERSET FIRE DEPARTMENT                                CROSS-APPELLANTS


-2-

v.                    HONORABLE EDDY MONTGOMERY, JUDGE
ACTION NO. 21-CI-00695


KENTUCKY ASSOCIATION OF
COUNTIES ALL LINES FUND                              CROSS-APPELLEE


OPINION AFFIRMING IN PART,
REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  ACREE, COMBS, AND ECKERLE, JUDGES.

ECKERLE, JUDGE:  This appeal arises from a single motor-vehicle accident involving an unoccupied, runaway fire truck.  Appellant/Cross-Appellee, Kentucky Association of Counties All Lines Fund ("KALF"), challenges the Pulaski Circuit Court's Order granting judgment in favor of Appellees/Cross-Appellants (collectively, "Somerset") specifically named as follows:  City of Somerset (the "City"); Somerset Fire Department ("SFD"); Stephen Tyler Jasper, individually and in his official capacity as SFD Chief ("Jasper"); Bryan West, individually and in his official capacity as SFD Lieutenant ("West"); Samuel Hudson, individually and in his official capacity as SFD Captain ("Hudson"); Travis Wesley, individually and in his official capacity as a SFD firefighter ("Wesley"); David Volz, individually and in his official capacity as SFD Battalion Chief ("Volz"); and

Bengie Howard, individually and in his official capacity as SFD Training Director ("Howard").

This Court, having been fully briefed on the matter, hearing oral arguments on May 22, 2025, and carefully considering the merits, hereby affirms the Pulaski Circuit Court's Order in part, reverses in part, and remands with further instructions.

FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts are not in dispute. The City and Pulaski County, through the Pulaski County Fiscal Court (collectively, the "County"), entered an interlocal cooperation agreement, titled "Comprehensive Fire Protections Services" (the "Agreement"). Pursuant to the Agreement, the City and the County are contractually obligated to share responsibility for fire protection services. As such, SFD would provide fire services in exchange for the County's funding and allocation of firefighting equipment, including SFD's use of the County's 2012 pumper fire truck, which is also frequently referred to as a fire engine (the "Firetruck").

On August 21, 2020, the date of the subject accident, SFD possessed and garaged the Firetruck in its Fire Station Two. West contacted the County's Fleet Manager, Frank Hansford ("Hansford"), regarding problems with the Firetruck's power steering. Suspecting a leak of power steering fluid, West

-4-

advised Hansford that he would check the power steering reservoir. West, along with Hudson and Wesley, commenced inspection of the reservoir (West, Hudson, and Wesley are collectively referred to as the "Firefighters"). In doing so, Hudson partially removed the Firetruck from the bay and lifted the cab. The Firetruck's parking brake became disengaged once the cab was lifted. The parties have reached the factual consensus that a piece of equipment likely fell on the brake switch, thereby releasing the parking brake. As a result, the unmanned Firetruck rolled down the fire station driveway and crashed into a commercial building. Fortunately, no physical injuries resulted. However, the building's owner, Eagle Creek Properties, L.L.C., and the building's tenant, Brighter Futures Therapy Center, L.L.C., suffered property damage. The Firetruck was also severely damaged, resulting in a total loss.

On the date of the accident, the Firetruck was covered under an automobile liability policy of insurance issued by KALF to the County (hereinafter the "Policy"), which states, in pertinent part, the following:

> **AUTO COVERAGE FORM**
>
> Throughout this Coverage Form the words **you** and **your** refer to the Named **Insured** shown in the Declarations, and any other person or organization qualifying as an **insured** under this Coverage Form. The words **we**, **us** and **our** refer to the company providing this insurance.

The word **insured** means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II, A., l.).

Other words and phrases that appear in **bold** have special meaning. Refer to DEFINITIONS (SECTION V).

*****

## SECTION II- AUTO LIABILITY COVERAGE

## A. COVERAGE

**We** will pay all sums an **insured** legally must pay as damages because of **bodily injury** or **property damage** to which this insurance applies, caused by an **accident** and resulting from the ownership, maintenance or use of a covered auto.

*****

1. Who Is An Insured

The following are **insureds**:

(a) **You** for any covered auto . . . .

(b) Anyone else while using with **your** permission a covered **auto you** own, hire or borrow. . . .

(c) Anyone liable for the conduct of an **insured** described above but only to the extent of that liability.

*****

## SECTION V- DEFINITIONS

7. **Insured** – any person or organization qualifying as an **insured** in the **Who Is An Insured** provision of the applicable coverage.

> Except with respect to the Limit of Insurance, the coverage afforded applies separately to each **insured** who is seeking coverage or against whom a **claim** or **suit** is brought.

Trial Record ("TR"), p. 174-76.

Following the accident, the County submitted a notice of loss to KALF. An investigation ensued, during which KALF obtained the Firefighters' participation and written statements. KALF thereafter extended coverage for the loss and submitted the following three payments: (1) $89,750.00 to the County for the total value of the Firetruck, less the salvage value and deductible; (2) $225,000.00 to Eagle Creek Properties, L.L.C. for damage to the building; and (3) $41,458.64 to Brighter Futures Therapy Center, L.L.C. for damage to its property and incidental costs. KALF maintains that it remitted payments for the subject property damage pursuant to its contractual obligation under the Policy to pay all sums the County, as the named insured and owner of the Firetruck, was responsible for paying.

In exchange for payment, all three claimants released KALF and the County from further liability. KALF did not inform Somerset that it was not an insured under the Policy. Likewise, KALF did not notify Somerset that it made payments on the claims based on the County's primary coverage as owner of the Firetruck.

On July 30, 2021, KALF commenced suit against Somerset based on its subrogated right to recover the three payments totaling $356,208.64. KALF's Complaint alleged the following three causes of action: (1) negligence against the Firefighters; (2) negligent training and supervision against Hudson, West, Jasper, Volz, and Howard; and (3) vicarious liability against the City and SFD.

Somerset obtained defense counsel at its own expense, and timely responded to KALF's Complaint. The procedural history reflects that Somerset filed its initial Answer on August 27, 2021. Less than one week later, on September 1, 2021, Somerset filed an Amended Answer asserting "as an affirmative defense, all coverages and provisions set forth within" the Policy. TR, p. 54. In December of 2022, Somerset sought leave of the Trial Court to file a second amended answer to include a demand for declaratory judgment and attorneys' fees. Somerset contemporaneously filed its proposed Seconded Amended Answer and a Motion for Declaratory Judgment and Attorneys' Fees. In March of 2023, the Trial Court, over KALF's objection, granted Somerset's motion and deemed the Second Amended Answer filed.

In April of 2023, KALF filed a Motion to Strike Somerset's Second Amended Answer to the extent that it requested declaratory judgment, alleging a failure of factual support. Somerset then filed a "Re-Notice" of its Motion for Declaratory Judgment and Attorneys' Fees, in addition to a Response in

Opposition to KALF's Motion to Strike. Somerset argued that its Second Amended Answer constituted a pleading requesting affirmative relief in the form of a declaratory judgment, and that its Motion for Declaratory Judgment sufficiently provided the required jurisdictional allegations that an actual controversy existed. In June of 2023, without leave of the Trial Court, and absent a ruling on KALF's Motion to Strike, Somerset filed a Petition for Declaration of Rights demanding the following relief: (1) a declaration that Somerset is one of the "insureds" under the Policy; (2) an order dismissing KALF's Complaint; and (3) an order awarding Somerset's attorneys' fees.

Four months later, in August of 2023, Somerset sought ruling on its previously filed Motion for Declaratory Judgment on the grounds that it qualified as an insured under the Policy as a permissive user.[1] KALF responded that Somerset was not an insured under the Policy, as the Firefighters' actions did not constitute "using" the Firetruck, thus rendering any coverage for "permissive users" inapplicable. On September 25, 2023, the Trial Court denied Somerset's Motion for Declaratory Judgment, finding material issues of fact existed as to the Firefighters' use of the Firetruck.

---

[1] Somerset additionally argued that individually-named Defendants were insureds under the Policy as volunteers within the Pulaski County Fire Department and Pulaski County Fiscal Court. On appeal, Somerset does not expound upon this argument further.

On February 16, 2024, Somerset then moved for summary judgment on the grounds that KALF tendered the subject payments as a volunteer payor and was therefore precluded from seeking subrogation as a matter of law. On March 1, 2024, the Trial Court held oral arguments on that motion. Notwithstanding its prior Order denying Somerset declaratory judgment, the Trial Court focused on whether the Firefighters were using the Firetruck. KALF reminded the Trial Court that it had already determined by denying the motion for declaratory judgment that factual issues prevented a determination as to whether Somerset was an insured under the Policy. KALF also pointed out that the pending motion for summary judgment only concerned whether the volunteer rule applies to KALF's payments as a matter of law.

Days later, on March 6, 2024, the Trial Court issued an Order dismissing KALF's Complaint with prejudice and denied Somerset's request for attorneys' fees. The Order first concluded, as a matter of law, that Somerset qualified as a "permissive user" of the Firetruck and as an "insured" under the Policy. TR, p. 226. The Trial Court further ruled that, irrespective of Somerset's rights under the Policy, KALF's subrogation action is barred because it submitted payments on the claims voluntarily. The Trial Court neither elaborated as to its reasoning nor cited any statutes, contractual language, or points of authority. The Trial Court merely stated that its ruling was made "having come before the Court

-10-

upon the Motion for Summary Judgment" and based on its review of "the memoranda of the parties . . . [Somerset's] Motion for Declaratory Judgment and [KALF's] Response, [and] having heard arguments of counsel." TR, p. 225. It is from this Order that both KALF and Somerset appeal.

KALF's appeal challenges the Trial Court's classification of Somerset as an insured under the Policy. KALF also contends that it made the subject payments under its contractual obligations to the County, the named insured, pursuant to the Policy and not as a volunteer, and therefore it may pursue recovery against the alleged tortfeasors under its subrogated rights. In its cross-appeal, Somerset challenges the Trial Court's ruling on entitlement to attorneys' fees. We address both appeals in turn.

## STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rule of Civil Procedure ("CR") 56.03. A trial court must view the record in the light most favorable to the nonmoving party and resolve all doubts in the nonmoving party's favor. *Steelvest, Inc. v. Scansteel Service Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). The opposing party must present "at least some affirmative evidence

-11-

showing that there is a genuine issue of material fact for trial." *Id.* at 482. If the record fails to demonstrate a material issue of fact, judgment as a matter of law is necessitated. *Id.*

On appeal, a trial court's grant of summary judgment is subjected to a *de novo* standard of review. *Bruner v. Cooper*, 677 S.W.3d 252, 269 (Ky. 2023). Likewise, summary judgment may be granted in a declaratory judgment action pursuant to CR 56.01; *see also Schmidt v. Halpin*, 351 S.W.2d 57, 58 (Ky. 1961). Where summary judgment has been granted in a declaratory judgment action, and no bench trial was held, the appellate standard of review for summary judgments is utilized. *Foreman v. Auto Club Prop.-Cas. Ins. Co.*, 617 S.W.3d 345, 349 (Ky. 2021) (citing *Ladd v. Ladd*, 323 S.W.3d 772, 776 (Ky. App. 2010)). Furthermore, and as addressed herein, a trial court's interpretation of a policy of insurance presents questions of law, which this Court reviews *de novo*. *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73 (Ky. 2010).

## ANALYSIS

### A. *KALF's Appeal*

KALF acknowledges that this appeal rests on a determination of the identity of the insured under the Policy. KALF cannot maintain a subrogation action against an additional insured to recover payments it made for a loss covered

under the Policy. *See Am. Premier Ins. Co. v. McBride*, 159 S.W.3d 342 (Ky. App. 2004).

To evaluate whether Somerset is an insured under the Policy, we must first determine if the Firefighters are insureds. As we explain *infra*, if Firefighters qualify as insureds, then the remaining Somerset defendants – Jasper, Volz, Howard, the City, and SFD – also qualify as insureds under the plain language of the Policy. To frame precisely the outcome-determinative issue before us, this Court must decide whether the Firefighters, while in the process of inspecting the Firetruck for maintenance and/or repairs, were "using" the Firetruck within the terms of the Omnibus Clause of the Policy. The issue is one of contract interpretation.

"The goal of any court in interpreting a contract is to ascertain and to carry out the original intentions of the parties (*Wilcox v. Wilcox*, Ky., 406 S.W.2d 152, 153 (1966)) and to interpret the terms employed in light of the usage and understanding of the average person." *Deerfield Ins. Co. v. Warren Cnty. Fiscal Court, ex rel. City-Cnty. Planning Comm'n*, 88 S.W.3d 867, 873 (Ky. App. 2002) (citing *Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205, 206 (Ky. 1986)). When a policy of insurance fails to define a term, we afford the term its ordinary meaning if that meaning is not ambiguous. *Cincinnati Ins.*, 306 S.W.3d at 73 (citing *Bituminous Cas. Corp. v. Kenway Cont., Inc.*, 240 S.W.3d 633, 638 (Ky. 2007)).

If the term has not "acquired a technical meaning in law, [it] must be interpreted according to the usage of the average man and as [it] would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured." *Fryman*, 704 S.W.2d at 206 (citing *Donohue v. Washington Nat'l Ins. Co.*, 82 S.W.2d 780 (Ky. 1935)).

When the terms of an insurance contract are unambiguous and reasonable, they will be enforced. *Kentucky Ass'n of Cntys. All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 630 (Ky. 2005). If the contract of insurance is ambiguous, we will apply the doctrine of reasonable expectations to provide the insured entity with all coverage that it may reasonably expect under the policy. *Simon v. Continental Ins. Co.*, 724 S.W.2d 210, 212 (Ky. 1986). Additionally, we stress the principle that insurance contracts should be liberally construed to provide coverage. *Kentucky Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992).

This Court's plain reading of the Auto Coverage Form, Section II, Auto Liability Coverage, demonstrates that KALF has a contractual obligation to pay for "damages" if three broad elements exist. Those are as follows: (1) an insured is legally required to pay for property damages for which the insurance applies, (2) caused by an accident, and (3) resulting from the ownership, use, or maintenance of a covered automobile.

-14-

Based on KALF's own admissions, and the position that it advances in its appellate briefs, KALF does not dispute that property damage for which it now seeks reimbursement was caused by an accident and resulted from maintenance of the covered Firetruck. Appellant Brief, p. 12-13. KALF's position is that Somerset does not qualify as "an insured" under the Policy and therefore fails to meet element (1).

Because the Somerset defendants are not named collectively or individually as insureds in the Policy's coverages declaration, we turn to the Omnibus Clause, which defines an insured as "[a]nyone else while *using* with **your** permission a covered **auto you** own, hire or borrow . . . ." (Italicized emphasis added.) Briefly, we underscore that the term "using" in the Omnibus Clause is not necessarily synonymous with the term "use" under element (3) of the Policy's insuring agreement. The Policy refers to "using" when defining who is an insured, while the term "ownership, maintenance, or use" qualifies the damages for coverage. KALF has already conceded that coverage extends to property damage resulting from the Firetruck's "maintenance" not its "use." Said differently, this Court's analysis focuses exclusively on the meaning of the term "using" within the scope of the Omnibus Clause.

Somerset maintains that it qualifies as an additional insured under the Policy's Omnibus Clause based upon its status as a permissive user. Somerset

further states that even if the Firefighters' actions in causing the accident exceeded the scope of the County's permission, it still qualifies as an insured because it was initially granted permission. *Mitchell v. Allstate Ins. Co*., 244 S.W.3d 59 (Ky. 2008). In *Mitchell*, our Supreme Court adopted the "initial permission" doctrine, which allows coverage for a non-owner's use of a vehicle "even if the use of the vehicle was 'not within the contemplation of the parties or was outside any limitations placed upon the initial grant of permission.'" *Id.* at 62 (citing 46 C.J.S. *Insurance* § 1053 (1993)).

KALF, on the other hand, neither disputes that the County permitted Somerset to use the Firetruck pursuant to the Agreement, nor challenges the foundational principles espoused in *Mitchell*. Instead, KALF claims that Somerset does not qualify as an insured under the Omnibus Clause because the permissive use qualifier is wholly inapplicable where Somerset, including the Firefighters, were not "using" the Firetruck when the collision occurred. KALF posits that the on-premises performance of maintenance does not qualify as "using" the Firetruck. Thus, according to KALF, permissive use is only implicated if the Firefighters were physically driving the Firetruck when it crashed into the building. Accordingly, the outcome of this sub-issue will entail the determination of the type of actions that qualify as "using" the Firetruck within the meaning of the Policy.

Unfortunately, the Policy does not define the term "use" or "using." Likewise, it does not limit an omnibus insured only to those who operate or drive a covered automobile. Yet, KALF declares that the term "using" under the Policy is well-defined under Kentucky law, citing the definition of "use of a motor vehicle" as enumerated in the Kentucky Motor Vehicle Reparations Act (the "MVRA"), Kentucky Revised Statutes ("KRS") 304.39-010 *et seq*. For context, the MVRA provides basic reparation benefits for "injury arising out of the operation, maintenance, or use of a motor vehicle. . . ." KRS 304.39-020(2). The MVRA defines the phrase "use of a motor vehicle" as follows:

> "Use of a motor vehicle" means any utilization of the motor vehicle as a vehicle including occupying, entering into, and alighting from it. It does not include:
>
> (i) [c]onduct within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles unless the conduct occurs off the business premises; or
>
> (ii) [c]onduct in the course of loading and unloading the vehicle unless the conduct occurs while occupying, entering into, or alighting from it.

KRS 304.39-020 (6). KALF utilizes this definition to argue that the Firefighters were not "using" the Firetruck at the time of accident.

KALF provides us with several cases demonstrating the application of this definition of "use," relying heavily on two such cases. In the first case,

*Commercial Union Assurance Companies v. Howard*, 637 S.W.2d 647 (Ky. 1982), our Supreme Court held that the MVRA does not "afford coverage to an injured policyholder who is injured while attempting to repair his own vehicle while parked in his own driveway." In *Howard*, the Supreme Court clarified that the definition of "use of a motor vehicle," within the confines of the MVRA, "does not allow no-fault benefits to one privately engaged in *normal* vehicular repair work." *Id.* at 648 (emphasis in original). In its interpretation of the MVRA, the Supreme Court found ambiguity in the MVRA's definition of "use of a motor vehicle," yet believed the legislature intended to exclude no-fault coverage for injuries sustained from repairing or servicing a vehicle where other types of insurance, such as commercial liability, homeowner, or health insurance, constitute the proper policies to cover such claims. *Id.* at 649. Succinctly held, mandatory no-fault coverage is "intended to cover 'driving' the vehicle, not repairing it." *Id.*

The second case KALF relies upon is an unpublished, federal case from the United States District Court for the Western District of Kentucky. *Childress v. Interstate Battery Sys. of Am., Inc.*, Civil Action No. 1:09-CV-54-M, 2010 WL 600023 (W.D. Ky. Feb. 18, 2010). In *Childress*, the appellant removed his vehicle's battery and carried the battery into a garage where it exploded. *Id.* at *1. The appellant argued that the MVRA's extended statute of limitations applied to his product liability lawsuit against the battery manufacturer. *Id.* The District

-18-

Court, applying Kentucky law, held that the appellant's injuries did not occur while in "use of a motor vehicle" as defined in the MVRA. *Id.* at *3.

KALF also cites to other, distinguishable cases wherein the conduct giving rise to injury did not qualify as "use of a motor vehicle" as contemplated in the MVRA. *See State Farm Mut. Auto. Ins. Co. v. Hudson*, 775 S.W.2d 922, 923 (Ky. 1989) (holding that the claimant was not "using the vehicle" and therefore not entitled to basic reparation benefits for injuries sustained while unfastening a chain in an attempt to unload a tractor trailer); *Clark v. Young*, 692 S.W.2d 285 (Ky. App. 1985) (finding that the claimant, who was injured by a bungee strap hitting his eye while attempting to secure tarpaulin on a flatbed trailer, was not "using the vehicle").

After careful consideration and review, we find KALF's cited authority readily distinguishable as to its language and very purpose. We reject its argument that the MVRA's definition of "use of a motor vehicle" has any application to the case before us. Indeed, this case does not concern recovery of basic reparation benefits; rather, this Court is tasked with interpreting an undefined contractual term in a policy of liability insurance.

Unlike liability insurance, the MVRA is specifically designed to provide prompt medical and wage-loss payments to those injured in a motor vehicle accident, regardless of whose negligence caused the accident. *See* KRS

-19-

304.39-020(2) and (3). The MVRA is not only a distinct form of recovery but is unlike liability insurance in almost every respect. Former Kentucky Supreme Court Justice Charles M. Leibson perhaps best described these differences, stating the following: "The purpose of liability insurance is to indemnify the policyholder for his liability to third parties. The purpose of [the MVRA] . . . [is to] provide prompt and efficient payment for medical expenses and loss of income . . . . Thus it makes no sense to interpret the law so as to restrict benefits for [MVRA] claimants, applying liability insurance law." *State Farm Mut. Auto. Ins. Co. v. Rains*, 715 S.W.2d 232, 235 (Ky. 1986) (Leibson, J., dissenting).

The converse would thus also be true. While liberal MVRA benefits are afforded to those actively driving and riding in vehicles, they would be unavailable to those who are not using the vehicles for transport, but only for intended stationary loading, unloading, repairs, or maintenance during which an injury allegedly occurs. Consequently, the laws, theory, and language behind the expansive MVRA do not compel the result KALF seeks because the MVRA is inapposite to our analysis.

Notwithstanding its MVRA argument, KALF fails to provide any authority relevant to the issue of determining what constitutes "using" an automobile when deciding whether a putative insured qualifies as an omnibus insured under a liability policy. KALF's inability to support its argument with

-20-

precedential authority is not without cause given the unique circumstances of the accident here. This Court, too, has not located any Kentucky case law on this exact issue.

Because the term "using" is not defined by statute, case law, or the Policy, and as it has developed no technical meaning, we must interpret the term as a lay consumer would understand it. *McClendon*, 157 S.W.3d at 630. In this regard, it is appropriate to establish a meaning of the term through dictionary definitions. *See Auto-Owners Ins. Co. v. Veterans of Foreign Wars Post 5906*, 276 S.W.3d 298, 301 (Ky. App. 2009). Merriam-Webster states that "using," means "to put into service: have enjoyment of"; "to put into action or service"; and "to carry out a purpose or action by means of[.]" MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com (last accessed Apr. 8, 2025).

With this meaning in mind, we find that the Firefighters' actions triggering the causative chain of events resulting in damage constituted "using" the Firetruck. The uncontested facts demonstrate that the Firefighters operated the Firetruck, directly interacted with it while fixing it, and lifted the cab for inspection when the parking brake became disengaged, resulting in its movement down the inclined driveway.

Based on the Agreement and ordinary meaning of the term "using," we find the County, as the policyholder, understood the term to encapsulate the

Firefighters' actions. And we find that a layman would consider these actions to be "using" the Firetruck. The Firefighters were actively and physically present on the Firetruck, working with it, servicing it, carrying out the practice of driving it by making adjustments to it, and thus using it. If we interpret the meaning of "using" as KALF suggests, coverage for the Firefighters as omnibus insureds would only extend to situations where the engine is running. During repairs, engines are intermittently running and extinguished in order to perform the work safely. KALF would also limit coverage to situations in which the Firetruck is being physically driven. So, if the Firefighters repaired it, took it for a test drive, and then performed more repairs, it would not be covered at first, then subsequently be covered, and then lapse back into non-coverage for the same event, the entirety of which could last only minutes. This purported fragmented and spasmodic coverage would prove unworkable, and interpreting and managing it would lead to nothing but more litigation. We see no legitimate need to engender that result.

Moreover, and importantly, the Policy's plain language does not render coverage contingent on such use, and such interpretation goes against the basic understanding of insuring a high-risk vehicle such as a pumper fire engine. For that reason, this Court rejects KALF's argument that we create a narrow interpretation of the term "using" to mean operating the vehicle as a vehicle, as

opposed to interpreting "using" within the context of the wide permissive use the County granted Somerset through the Agreement.

We acknowledge that the undefined term "using" is not all-encompassing. Nonetheless, Kentucky law requires us to construe the Policy in favor of the insured, which necessitates an interpretation of the term "using" going beyond merely driving a covered automobile. If KALF intended a limited meaning of the term "using," it should have clarified or defined the term in the Policy. *See Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855 (Ky. 1992) (stating that an insurance company must be held strictly accountable for the language employed in its policy). It was KALF's burden to do so, not ours.

Our interpretation of the Policy's Omnibus Clause is reasonable and consistent with the intent of the parties and gives operative effect to the language contained therein. *See McClendon*, 157 S.W.3d at 630. A similar interpretation was expressed in *Kentucky Water Service Company v. Selective Insurance Company*, 406 S.W.2d 385 (Ky. 1966), where the Commonwealth's highest Court analyzed whether non-owners qualified as additional insureds under the omnibus clause of an automobile liability policy. The underlying facts arose from Jasper's use of his personal vehicle to collect water from Kentucky Water Service Company ("Kentucky Water"). *Id.* at 385. Specifically, Jasper drove his insured truck onto Kentucky Water's loading rack, connected a water hose to the tank, and

a Kentucky Water employee turned a valve to release the water. *Id.* The hose subsequently detached causing injury to Jasper. *Id.* Jasper brought suit against Kentucky Water and its employee, which then resulted in a declaratory action to determine whether the defendants were entitled to indemnity and defense under Jasper's automobile liability policy. *Id.*

The Court ultimately held that Kentucky Water and its employee were not additional insureds, as neither was "using" Jasper's truck. *Id.* at 387. While the Court did not define the term "using," the Court relied upon the parties' understanding of the insuring agreement. *Id.* The Court stated that "[a]n insurance contract . . . must be construed according to its true character and purpose, and in accordance with the intention[s and expectation interests] of the parties." *Id.* As applied, the Court underscored the undisputed facts that the truck was operated by Jasper and under his exclusive control. *Id.* The only act giving rise to potential liability on the part of Kentucky Water and its employee was the employee's act of turning on a water valve. *Id.* The Court explained that Jasper and his insurer did not contemplate or intend that the policy cover such action. *Id.* Though the ultimate holding of no coverage there differs from our finding of coverage here, the reasoning is the same: we must interpret the language of the contract reasonably and consistently with the intent of the parties in order to effectuate the language contained in the policy. Jasper and Kentucky Water did not intend

coverage under the factual circumstances of that case. Yet, here, they did intend for coverage for servicing the Firetruck in the firehouse for continued use in the active extinguishment of fires, its essential purpose and role. This use of the vehicle must necessarily have been contemplated by the insured.

What we gather from *Kentucky Water* and cases citing the same, is that it is reasonable for courts to refuse to extend the omnibus clause defining who is an insured to cover negligence of third persons who are in essence strangers to the policy and to the operational use of the covered automobile. Here, however, it is obvious that Somerset, specifically the Firefighters, were not third parties with chance encounters involving the Firetruck. As evidenced by the Agreement and the record, SFD was in exclusive possession and control of the Firetruck for the mutual benefit of the County and City. The County procured insurance for the Firetruck with the Agreement in place, and we must assume that KALF's underwriting process considered the same. KALF insured the Firetruck with these risks contemplated, collected premiums for said risks, and did not include any provisions, including definitions, that limited an additional "insured" under the Policy's Omnibus Clause to one in actual operation of the covered automobile or based upon the definition of "use" as provided in the MVRA.

The Agreement and testimony in the record show that the Firefighters were "using" the Firetruck with the County's permission as contemplated by the

Policy's Omnibus Clause. Again, the Firefighters had express permission to use the Firetruck to provide comprehensive fire protection and a logical form of that use is inspecting, repairing, and ensuring the Firetruck's operational ability. It would make no logical sense to conclude that the Firefighters were not using the Firetruck under these factual circumstances. Thus, and in sum, we decline to import KALF's preferred, narrow definition. Instead, we find that the Firefighters held the status of insureds under the Policy.

In turn, we also hold that the remaining Somerset defendants are insureds under the Policy. KALF's allegations of negligent training, negligent supervision, and vicarious liability are derivative to KALF's claim of negligence against the Firefighters. Therefore, as this Court already stated, under the plain language of the Policy, the remaining named Defendants are also insureds pursuant to subsection (c), which grants omnibus insured status to "anyone liable for the conduct of an insured described above . . . ."

Having determined that Somerset is an additional insured, KALF must provide Somerset with coverage under the Policy because, by any logic, the property damage at issue arose out of the Firefighters' use (current and future) of the covered Firetruck. Furthermore, we quote the Policy's severability clause, which states that "the coverage afforded applies separately to *each* insured who is seeking coverage or against whom a claim or 'suit' is brought." TR, p. 175

(emphasis added). Thus, the Trial Court properly dismissed KALF's Complaint against Somerset.

As we are affirming the Trial Court's Order on the basis of Somerset's status as an insured, we do not address KALF's argument regarding whether it made the subject payments voluntarily.

B. *Somerset's Cross-Appeal*

Somerset challenges the Trial Court's Order denying its request for attorneys' fees. As it acknowledged, Kentucky adheres to the "American rule," which only permits the recovery of attorneys' fees in the limited circumstances where specifically authorized by statute or contract. *Superior Steel, Inc. v. Ascent at Roebling's Bridge, L.L.C.*, 540 S.W.3d 770, 787 (Ky. 2017). Somerset's claim for attorneys' fees arises from the Policy, and it is thus based upon contract. In these circumstances, we apply a *de novo* standard of review in interpreting the applicable provisions. *See Cincinnati Ins. Co.*, 306 S.W.3d at 73.

In its briefs to this Court, Somerset identifies two Policy provisions in support of its argument for entitlement to attorneys' fees. The first provision, hereinafter referred to as the "Indemnity Provision," is found within the insuring agreement, which states that KALF "will pay all sums an insured legally must pay as damages because of bodily injury or property damage to which this insurance

-27-

applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto." (Original emphasis removed.)

The second Policy provision, hereinafter referred to as the "Duty to Defend Provision," states that KALF has "the right and duty to defend any insured against a suit asking for such damages . . . . However, we have no duty to defend any insured against a suit seeking damages for bodily injury or property damage . . . to which this insurance does not apply." (Original emphasis removed.)

During the May 22, 2025, oral argument, Somerset's counsel clarified his claim that Somerset's entitlement to attorneys' fees is established in the Policy's Duty to Defend Provision. We similarly agree that the Indemnity Provision does not impose upon KALF a contractual obligation to pay Somerset's defense fees. Somerset does not face liability or a monetary judgment for the subject property damage. Therefore, as to Somerset, the indemnitee, there are simply no damages for KALF to indemnify. *See Aetna Cas. & Sur. Co. v. Commonwealth*, 179 S.W.3d 830, 839-40 (Ky. 2005) (where undefined in the policy's indemnity provision, the term "damages" was interpreted to require a showing that the insured was under a legal obligation to expend money).

Turning to the Policy's Duty to Defend Provision, however, we conclude that Somerset is entitled to recover attorneys' fees incurred in defense of this action. It is well-settled law that the duty to defend is triggered "if there is

-28-

any allegation which potentially, possibly or might come within the coverage of the policy." *James Graham Brown Found. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991) (citing *O'Bannon v. Aetna Cas. & Sur. Co.*, 678 S.W.2d 390 (Ky. 1984)).

In circumstances where the insurer believes that there is no coverage, it may choose either: (1) to decline to defend the insured; or (2) to provide a defense and preserve its rights by reservation letter. *Aetna Cas. & Sur. Co.*, 179 S.W.3d at 841. Regardless of the insurer's course of action, it is not relieved of the duty to defend until there is a judicial declaration that the putative insured is not covered under the policy. *James Graham Brown Found.*, 814 S.W.2d at 279 (citing 7C Appelman, *Insurance Law and Practice* § 4683.01 at 69 (Berdal Ed. 1979)).

As our Supreme Court explained, if the insurer elects not to defend, and coverage is found, the insurer is liable for "reimbursement of defense costs." *Aetna Cas. & Sur. Co.*, 179 S.W.3d at 841. Indeed, "[a]n insurer should not stand to gain from its denial to defend its insured." *Id.* at 842. Furthermore, in *Cincinnati Inurance Co. v. Vance*, 730 S.W.2d 521, 522 (Ky. 1987), although factually distinguishable, our Supreme Court stated the following:

> The issue is whether a liability insurance carrier, having decided that a claim alleged against a putative insured does not fall within the coverage of its policy, may elect not to defend and later litigate the coverage question, or

whether the insurance company must defend regardless of coverage unless and until it has (1) entered into a reservation of rights agreement with the putative insured or (2) obtained a declaratory judgment that there is no coverage. We hold that the insurance company, at its own peril, may elect not to defend the original action against a putative insured, although thereafter it may be liable for the judgment if it is judicially determined that the policy did in fact provide coverage in the circumstances.

In suing Somerset – a putative insured – KALF implicitly determined that the allegations of its Complaint did not fall within the coverage terms of the Policy. KALF's determination that Somerset failed to qualify as an additional insured ultimately proved incorrect. Instead of defending Somerset under reservation of rights and quickly seeking a no-coverage judicial declaration, KALF, to its peril, pursued litigation on the issue of liability. As a result, Somerset incurred attorneys' fees in defense of KALF's lawsuit.

Briefly, we address KALF's arguments that Somerset cannot recover attorneys' fees as "this appeal arises from [Somerset's] own petition for declaratory judgment, and it would be unethical for an attorney whose fees are being paid by an insurance company to represent an insured seeking a declaration of rights." KALF's Cross-Appeal Response Brief, p. 6. While Somerset raised the issue of coverage through declaratory procedural mechanisms, the Trial Court denied Somerset's Motion for Declaratory Judgment. The Order on appeal came before the Trial Court on Somerset's Motion for Summary Judgment on the issue

-30-

of liability. Regardless, however, KALF – not Somerset – instituted and pursued the lawsuit. Absent precedential authority to the contrary, we will not penalize Somerset for seeking a judicial determination of coverage, especially where, as here, KALF could have instituted an action to avoid the full extent of defense costs it now faces but chose not to do so. Moreover, we reject KALF's contention that it was ethically barred from providing Somerset with a defense. The Kentucky Bar Association provides ample guidance concerning the ethical dilemmas arising in insurance litigation, including those unique to the tripartite relationship of the insurer, insured, and counsel. Regarding the facts before us, there is no ethical rule excusing an insurer from its contractual duty to defend a putative insured.

Therefore, we reverse the Trial Court's denial of Somerset's request for attorneys' fees and remand this case to the Trial Court so it may award Somerset the attorneys' fees that it determines to be reasonable.

## CONCLUSION

This Court hereby affirms the Pulaski Circuit Court's Order as to its findings that Somerset was an insured under the Policy as a matter of law, and that dismissal of KALF's Complaint is warranted. Regarding Somerset's cross-appeal, this Court reverses the Pulaski Circuit Court's Order as to its denial of Somerset's request for attorneys' fees. Accordingly, this Court remands this action back to the

Pulaski Circuit Court with instructions that it dismiss KALF's Complaint and determine and award Somerset its reasonable attorneys' fees.

ALL CONCUR.

| | |
|---|---|
| BRIEFS FOR APPELLANT/CROSS-APPELLEE: | BRIEFS FOR APPELLEES/CROSS-APPELLANTS: |
| D. Barry Stilz<br>Lynn Sowards Zellen<br>James E. Yeager III<br>Lexington, Kentucky | James G. Womack<br>Joshua L. Ellis<br>Lexington, Kentucky |
| ORAL ARGUMENT FOR APPELLANT/CROSS-APPELLEE: | ORAL ARGUMENT FOR APPELLEE/CROSS-APPELLANT: |
| James E. Yeager III<br>Lexington, Kentucky | Joshua L. Ellis<br>Lexington, Kentucky |